1  C.D. Michel – SBN 144258
   Clinton B. Monfort – SBN 255609
2  Sean A. Brady – SBN 262007
   Anna M. Barvir – SBN 268728
3  cmichel@michellawyers.com
   MICHEL & ASSOCIATES, P.C.
4  180 E. Ocean Blvd., Suite 200
   Long Beach, CA 90802
5  Telephone: (562) 216-4444
   Facsimile: (562) 216-4445
6  www.michellawyers.com

7  Attorneys for Plaintiffs

8

9         **IN THE UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA**

11             **WESTERN DIVISION**

12

| | |
|---|---|
| MICHELLE FLANAGAN, SAMUEL GOLDEN, DOMINIC NARDONE, JACOB PERKIO, and THE CALIFORNIA RIFLE & PISTOL ASSOCIATION, | Case No.: 2:16-cv-06164-JAK-AS |
| Plaintiffs, | **PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANT HARRIS' MOTION TO DISMISS COMPLAINT AND DEFENDANT MCDONNELL'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| CALIFORNIA ATTORNEY GENERAL KAMALA HARRIS, in her official capacity as Attorney General of the State of California, SHERIFF JAMES McDONNELL, in his official capacity as Sheriff of Los Angeles County, California, and DOES 1-10, | Date:        February 13, 2017 Time:        8:30 a.m. Courtroom:   750 Judge:       The Hon. John A. Kronstadt Action Filed: August 17, 2016 |
| Defendants. | |

28

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................iii

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS ...................................................................................2

    I.    Defendants' Comprehensive Carry Prohibitions...........................................2

        A.    Loaded Firearm Restriction ...................................................................2

        B.    Concealed Firearm Restriction ..............................................................2

        C.    Unloaded Open Carry Restrictions ........................................................3

        D.    Carry Licenses......................................................................................3

        E.    Defendant McDonnell's Carry License Policy .....................................4

    II.    Elimination of Plaintiffs' Right to Bear Arms Outside the Home ...............4

    III.    Plaintiffs' Constitutional Claims ................................................................5

STANDARD OF REVIEW ..................................................................................6

ARGUMENT .......................................................................................................6

    I.    Plaintiffs Alleged a Valid Claim That Defendants' Elimination of Plaintiffs' Right to Bear Arms Violates the Second Amendment.................6

    II.    Plaintiffs Alleged a Valid Claim That Defendants' Disparate Treatment Concerning The Exercise of the Right to Bear Arms Violates the Equal Protection Clause ....................................................................................10

CONCLUSION...................................................................................................15

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

*Barker v. Riverside Cnty. Office of Ed.*,
    584 F.3d 821 (9th Cir. 2009) ........................................................ 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 6

*Cal-Almond, Inc. v. Dep't of Agric.*,
    67 F.3d 874 (9th Cir. 1995) ....................................................... 8, 9

*City of Cleburne, Tex., v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ................................................................ 10, 11

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................5, 6, 7, 12

*Greater New Orleans Broad. Ass'n v. United States*,
    527 U.S. 173 (1999) ...................................................................... 9

*Harper v. Va. Bd. of Elections*,
    383 U.S. 663 (1966) ................................................................ 10, 12

*Hussey v. City of Portland*,
    64 F.3d 1260 (9th Cir. 1995) .................................................. 10, 12

*Kramer v. Union Free School Dist.*,
    395 U.S. 621 (1969) ................................................................ 10, 12

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ........................................................ 6

*McDonald v. Chicago, Ill.*,
    561 U.S. 742 (2010) ...................................................................... 7

*Moore v. Madigan*,
    702 F.3d 933 (2012) ...................................................................... 7

*Muscarello v. United States*,
    524 U.S. 125 (1998) ...................................................................... 6

TABLE OF AUTHORITIES

*Orin v. Barclay*,
        272 F.3d 1207 (9th Cir. 2001) ........................................................ 11

*Peruta v. Cnty. of San Diego*,
        824 F.3d 919 (9th Cir. 2016) ......................................... 1, 7, 8, 9, 10, 13, 14

*Porter v. Jones*,
        319 F.3d 483 (9th Cir. 2003) ......................................................... 6

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
        411 U.S. 1 (1973) ................................................................... 14

*Sanjuan v. American Bd. of Psychiatry & Neurology*,
        40 F.3d 247 (7th Cir. 1994) ........................................................... 6

*Teixeira v. Cnty. of Alameda*,
        822 F.3d 1047 (9th Cir. 2016) .............................................. 1, 11, 12

*World Wide Rush, LLC v. City of Los Angeles*,
        606 F.3d 676 (9th Cir. 2010) ......................................................... 9

**Statutes**

Cal. Penal Code § 16505 ................................................................ 3

Cal. Penal Code § 25400 ................................................................ 2

Cal. Penal Code §§ 25505-25645 ....................................................... 3

Cal. Penal Code § 25850 ................................................................ 2

Cal. Penal Code §§ 26000-26055 ....................................................... 2

Cal. Penal Code §§ 26150-26185 ....................................................... 3

Cal. Penal Code § 26350 ................................................................ 3

Cal. Penal Code §§ 26361-26391 ....................................................... 3

Cal. Penal Code § 26400 ................................................................ 3

Cal. Penal Code § 26405 ................................................................ 3

**Rules**

Fed. R. Civ. P. 8 ............................................................... 6, 14, 15

Fed. R. Civ. P. 12 ..................................................................... 6

iv

TABLE OF AUTHORITIES

## INTRODUCTION

This suit seeks to vindicate Plaintiffs' Second Amendment right to bear arms beyond the home for self-defense. California completely bars Plaintiffs from carrying firearms openly and Defendant McDonnell's state-sanctioned policy denies them the license required to carry a concealed firearm. Collectively, these restrictions operate to wholly destroy Plaintiffs' Second Amendment right to carry a firearm for self-defense. They also violate the Equal Protection Clause because they authorize certain individuals to exercise the right to bear arms beyond the home, while denying that fundamental right to others—with no valid basis for the distinction.

Defendants ask this Court to dismiss what they call "Plaintiffs' concealed-carry challenge" in light of a divided en banc panel opinion in *Peruta v. Cnty. of San Diego*, 824 F.3d 919 (9th Cir. 2016). But Plaintiffs are not bringing a "concealed-carry challenge."  As the complaint makes unmistakable, Plaintiffs claim that the Defendants' regulatory scheme *as a whole* violates the Second Amendment because it prevents Plaintiffs from carrying *either openly or concealed*. The en banc decision in *Peruta* expressly reserved that question, *see id.* at 927, 941, and accordingly provides no basis for dismissing Plaintiffs' claim here.

Defendants also argue that Plaintiffs' Equal Protection claim is barred by a distinguishable ruling in *Teixeira v. Cnty. of Alameda*, which upheld the dismissal of an Equal Protection claim that was simply redundant of a Second Amendment claim. 822 F.3d 1047, 1052 (9th Cir. 2016). Defendants' reliance on this case stems from a broader misunderstanding of Plaintiffs' Equal Protection claim. Plaintiffs do not merely restate their Second Amendment claim that Plaintiffs have a right to bear arms beyond the home. Rather, they challenge Defendants' restriction of Plaintiffs' right to bear arms to their homes, while authorizing other individuals to exercise that right beyond their doorsteps with no valid basis for that disparate treatment.  *Teixeira* accordingly does not compel dismissal here. At bottom,

1

Plaintiffs have alleged a valid claim that Defendants' disparate treatment concerning their accommodation of the right to bear arms beyond the home violates the Fourteenth Amendment.

As set forth in greater detail below, the Court should deny Defendants' motions.

## STATEMENT OF FACTS

### I. DEFENDANTS' COMPREHENSIVE CARRY PROHIBITIONS

With very limited exceptions, California generally bars residents from carrying firearms for self-defense beyond the home. It does so regardless of whether the firearm is loaded or unloaded or whether it is carried concealed or openly, unless the individual has a license to carry a firearm ("Carry License") issued by the local sheriff or chief of police. Defendant McDonnell refuses to issue Carry Licenses to anyone but the tiny fragment of the population that can show "convincing evidence of a clear and present danger." Thus, ordinary, law-abiding residents of Los Angeles County, including Plaintiffs, may not lawfully carry a firearm beyond the home.

### A. Loaded Firearm Restriction

The State generally prohibits law-abiding citizens from carrying a loaded firearm on the person or in a vehicle in public. Cal. Penal Code § 25850. Although California law authorizes the carriage of loaded firearms in certain limited circumstances and by specific classes of individuals, like peace officers, these exceptions do not allow ordinary, law-abiding citizens to carry operable, loaded firearms for self-defense in public during the course of their daily lives without a valid Carry License. *See id*. §§ 26000-26055; Compl. ¶¶ 38-40.

### B. Concealed Firearm Restriction

California law also prohibits the carrying of concealed firearms in any place outside one's residence, place of business, or other private property. *Id*. §§ 25400, 25605. Like the narrow exceptions to California's loaded firearm restrictions, the

2

limited exceptions to California's concealed carry restrictions do not authorize ordinary, law-abiding citizens to carry concealed firearms in public for self-defense without a valid Carry License. *Id*. §§ 25505-25645; Compl. ¶¶ 41-43.

### C.    Unloaded Open Carry Restrictions

California further prohibits the carriage of unloaded, exposed handguns in any public place, except in unincorporated areas where the discharge of firearms is allowed. *Id*. § 26350. None of the exceptions to this prohibition authorize ordinary, law-abiding citizens to generally carry a firearm in public, even if it is unloaded and thus inoperable for self-defense. *Id*. §§ 26361-26391; Compl. ¶¶ 44-45.[1]

### D.    Carry Licenses

California authorizes city police chiefs and county sheriffs ("Issuing Authorities") to issue Carry Licenses to their residents, allowing licensees to carry a loaded handgun beyond the home, subject to restrictions. To qualify for a Carry License, a resident must, among other requirements, *id*. §§ 26150-26185, establish "good cause" for the license as defined by the local Issuing Authority. *Id*. § 26150(a). Under California law, Issuing Authorities exercise unfettered discretion in deciding whether an applicant has "good cause" to be issued a Carry License. Compl. ¶¶ 49-52.

Issuing Authorities in counties with populations over 200,000, like Los Angeles County, can only issue licenses to carry a concealed firearm. California law prohibits them from issuing licenses to carry a loaded handgun in an exposed manner. *Id*. §§ 26150(b)(2), 26155(b)(2); Compl. ¶ 53.

Because California law generally prohibits the carrying of firearms in public in *any* manner, a Carry License is the *only* means by which individuals may

---

[1] California law also generally prohibits the carriage of unloaded long guns. *Id*. §§ 16505, 26400, 26400(c). With slight variations, the same narrow exceptions to California's restrictions on openly carrying unloaded handguns in public apply to California's restrictions on the carrying of unloaded long guns. *Id*. § 26405; Compl. ¶¶ 46-47.

3

generally carry a firearm for self-defense in public during the course of their daily lives. Compl. ¶ 55.

### E.   Defendant McDonnell's Carry License Policy

According to his official written policy, and the denials of Plaintiffs' applications for Carry Licenses, Defendant McDonnell refuses to issue Carry Licenses where an applicant asserts a general desire for self-defense as his or her "good cause"—even if the applicant is a law-abiding, responsible Los Angeles County resident who satisfies all other statutory requirements for the license. To even potentially satisfy Defendant McDonnell's "good cause" standard, applicants must provide "convincing evidence of a clear and present danger."[2] Compl. ¶¶ 44-45.

Defendant McDonnell uses his state-sanctioned "good cause" policy to deny Carry Licenses to nearly all law-abiding adults by denying their applications or, in many cases, informing potential applicants that applying would be futile because they would not satisfy his policy. Compl. ¶¶ 5.

## II.   ELIMINATION OF PLAINTIFFS' RIGHT TO BEAR ARMS OUTSIDE THE HOME

Plaintiffs and members of Plaintiff CRPA ("Plaintiffs") are law-abiding residents of Los Angeles County who, despite being eligible to own firearms under California and federal law, are prohibited from carrying a firearm in public for self-defense in any manner. Compl. ¶¶ 13-14, 58-66.

Because California law prohibits Plaintiffs from openly carrying a firearm in public for self-defense, Plaintiffs' only option for carrying a firearm for self-defense is via a concealed Carry License. Accordingly, Plaintiffs applied to Defendant McDonnell for a concealed Carry License, asserting self-defense as their

---

[2] Concealed Weapon Licensing Policy, Los Angeles County Sheriff's Department, available at http://shq.lasdnews.net/content/uoa/SHQ/Concealed WeaponLicensePolicy.pdf (last visited November 29, 2016).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

"good cause" for their respective licenses. Defendant McDonnell denied each of Plaintiffs' applications solely because he concluded they did not satisfy his restrictive "good cause" policy. Compl. ¶¶ 13-23.

As a result of Defendants' collective carry restrictions, Plaintiffs are prohibited from carrying a firearm in public for self-defense, whether openly or concealed. Compl. ¶¶ 65.

### III. PLAINTIFFS' CONSTITUTIONAL CLAIMS

Plaintiffs' Second Amendment claim seeks to remedy the complete denial of their right to bear arms in case of confrontation, as articulated by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Compl. ¶¶ 30-36. Because California law prohibits them from openly carrying firearms, and Defendant McDonnell denies them the only lawful means of carrying a concealed firearm, Plaintiffs are completely barred from carrying a firearm for self-defense—in any manner. Compl. ¶¶ 58-66. Plaintiffs are entitled to relief from the complete denial of this fundamental right and have accordingly challenged Defendants' restrictions, which collectively destroy their right to carry a firearm for self-defense. Compl. ¶¶ 71-80.

Plaintiffs also allege that Defendants' unequal treatment concerning the exercise of the right to bear arms, without justification, violates the Equal Protection clause. Compl. ¶¶ 81-87. Specifically, Defendants' restrictions distinguish between individuals who can publicly carry a concealed firearm for self-defense, and those who cannot, based upon their individualized demonstration of "good cause" as interpreted by Defendant McDonnell. Compl. ¶¶ 56-57. Similarly, the State distinguishes between individuals who can publicly carry an exposed firearm for self-defense, and those who cannot, based upon the population of their county of residence. Compl. ¶¶ 4, 53. Defendants cannot justify their policies that authorize some individuals to exercise the right in public, while denying the exercise of that right in public to others. Compl. ¶ 86.

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STANDARD OF REVIEW

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) merely requires that a plaintiff provide a short and plain statement showing that he is entitled to relief to give a defendant fair notice of the claims and the grounds for the claims. Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may challenge a complaint by claiming that it fails to specify a claim for relief. At this stage in the proceedings, district courts are required to construe the allegations in the complaint in the light most favorable to the Plaintiffs. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). The plaintiff "'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (quoting *Sanjuan v. American Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)).

## ARGUMENT

### I. PLAINTIFFS ALLEGED A VALID CLAIM THAT DEFENDANTS' ELIMINATION OF PLAINTIFFS' RIGHT TO BEAR ARMS VIOLATES THE SECOND AMENDMENT

Plaintiffs' Second Amendment claim in this case is straightforward. It seeks to remedy the complete abrogation of Plaintiffs' right to bear arms as articulated by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *Heller*, the Court confirmed that the Second Amendment guarantees the individual right of responsible, law-abiding citizens to keep *and bear* arms for self-defense. *Id.* at 595. Significantly, the Court interpreted the phrase "bear arms" to mean "'wear, bear, or carry . . . upon the person or in the clothing or in a pocket [i.e., openly or concealed] for the purpose of . . . being armed and ready'" in case of conflict with another person. *Id.* at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998)). *Heller* thus instructs that the Second Amendment guarantees to all

6

responsible, law-abiding citizens the right to carry arms for self-defense in case of confrontation, at least in non-sensitive, public places. *Id.* at 592, 626-27. And because the rights enshrined in the Second Amendment are "fundamental to *our* scheme of ordered liberty," the Court later held that the Second Amendment is fully incorporated to shield against state and local infringements. *McDonald v. Chicago, Ill.*, 561 U.S. 742, 767 (2010).

Because California prohibits Plaintiffs from carrying firearms openly and Defendant McDonnell's state-sanctioned "good cause" policy denies them the only lawful means of carrying a concealed firearm, Plaintiffs are completely prohibited from exercising their right to carry a firearm for self-defense outside their homes. Compl. ¶¶ 1-6, 37-66, 71-80. These restrictions, which effectively destroy the right to *bear* arms, just like restrictions that destroy the right to *keep* arms, cannot be sustained. *See Heller*, 554 U.S. at 629; *see also Moore v. Madigan*, 702 F.3d 933, 936-42 (2012) (striking down Illinois' prohibitory carry scheme barring law-abiding citizens from carrying a firearm for self-defense in any manner). Plaintiffs have thus alleged a valid claim that Defendants' total elimination of Plaintiffs' right to bear arms violates the Second Amendment, and they have accordingly challenged Defendants' statutes and policies that collectively destroy their ability to carry a firearm in any manner. Compl. ¶¶ 8-12, 71-80.

Defendants argue that any challenge to Defendants' concealed carry restrictions is foreclosed by the decision of a divided en banc panel of the Ninth Circuit in *Peruta v. Cnty. of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc). State Mem. P. & A. Supp. Mot. Dismiss ("State Mot.") 5-6; McDonnell Mem. P. & A. Supp. Mot. Dismiss ("McDonnell Mot.") 3-5. Because *Peruta* held that "the Second Amendment does not preserve or protect the right of a member of the general public to carry concealed firearms in public," State Mot. 5:10-6:13 (quoting *Peruta*, 824 F.3d at 924), the State urges this Court "to dismiss with prejudice" the Second Amendment challenge to "the concealed-carry laws (i.e., paragraphs 73 and

7

76-80 of the Complaint)." State Mot. 6:10-13.

Similarly, Defendant McDonnell argues that *Peruta* bars Plaintiffs from challenging his restrictive "good cause" policy that prevents Plaintiffs and other law-abiding citizens from obtaining a permit to carry a concealed firearm. McDonnell Mot. 3:15-5:11. In light of *Peruta*, and because it is the State that prohibits Defendant McDonnell from issuing Plaintiffs a permit to a carry a firearm openly, he asks the court to dismiss Plaintiffs' Second Amendment claim against him. *Id.*

These arguments rest on a misunderstanding both of *Peruta* and of Plaintiffs' complaint. The en banc majority in *Peruta* construed the plaintiffs' complaint in that case to "challenge only policies governing concealed carry," and accordingly decided "only the question whether the Second Amendment protects, in any degree, the ability to carry concealed firearms in public." *Peruta*, 824 F.3d at 927. The majority expressly did "not reach the question whether the Second Amendment protects *some* ability to carry firearms in public, such as open carry." *Id.* (emphasis added); *see id.* ("The Second Amendment may or may not protect, to some degree, a right of a member of the general public to carry firearms in public."); *id.* at 941 ("we do not decide" whether the Second Amendment "protect[s] the right of a member of the general public to carry a firearm in public"). Nor did it reach the question of what remedy would be appropriate if a State's laws operate to wholly foreclose the exercise of that Second Amendment right.

To be sure, the plaintiffs and dissenting judges in *Peruta* vigorously disagreed with the majority's narrow reading of the complaint, which conflated the plaintiffs' proposed remedy with their asserted right, in fundamental contradiction with both Ninth Circuit and Supreme Court jurisprudence on individual rights. *See, e.g.*, *Cal-Almond, Inc. v. Dep't of Agric.*, 67 F.3d 874, 879 (9th Cir. 1995) (courts should not "confuse[] the distinction between right and remedy"), *cert. granted and judgment vacated on other grounds*, 521 U.S. 1113 (1997). But there can be no

8

such dispute about the nature of the challenge asserted in this case. Plaintiffs have not confined their challenge solely to the State's concealed carry restrictions; nor have they confined their challenge to Defendants' open carry restrictions. Instead, Plaintiffs have brought a single claim for relief under the Second Amendment asserting that Defendants' carry restrictions *as a whole* violate their right to bear arms, *see* Compl. ¶¶71-80, and seek a "declaration that denying all manners of publicly carrying a firearm for self-defense to law-abiding citizens violates the Second Amendment," Prayer for Relief ¶2. In other words, Plaintiffs ask this Court to decide whether the Second Amendment protects *some* right to carry firearms beyond the home—exactly the question that the en banc majority reserved in *Peruta. See* 824 F.3d at 927, 941.

That is no accident. Plaintiffs filed their complaint after the en banc decision in *Peruta* and designed their challenge expressly to address the question that *Peruta* reserved, so that a court can resolve—once and for all—whether the Second Amendment protects the right to carry a firearm outside the home in some manner, either openly or concealed. Defendants' attempt to bifurcate Plaintiffs' single Second Amendment claim into two component parts is irreconcilable with the complaint and with the reasoning in *Peruta.*  It is also irreconcilable with cases making clear that, when analyzing a restriction on constitutional rights, "'the effect of the challenged restriction … ha[s] to be evaluated in the context of the entire regulatory scheme, rather than in isolation.' " *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 686-87 (9th Cir. 2010) (quoting *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 192 (1999)).

Moreover, dismissing the concealed carry aspects of the claim (to the extent such a fractional dismissal of a single claim is even possible) could ultimately lead to the perverse result of confining the Court's available remedies for the Second Amendment violation that Plaintiffs allege. Although Plaintiffs necessarily challenged each component of Defendants' public carry ban as a result of the

9

*Peruta* decision, Plaintiffs are not insisting that this Court must strike down all of Defendants' carry restrictions. Rather, Plaintiffs simply allege that their right to bear arms must be accommodated *in some manner*, and have made clear that they would accept either open or concealed carry. By asking this Court to confine its analysis solely to the open carry restrictions, Defendants would deny this Court— and themselves—the flexibility to let the State determine which manner of carry to make available.

Should this Court nonetheless determine that it is bound to dismiss those aspects of Plaintiffs' Second Amendment claim that reference Defendants' concealed carry restrictions, Plaintiffs do not waive their challenges to those restrictions and expressly wish to preserve them for consideration in the appropriate venue. Finally, because paragraphs 77-80 of Plaintiffs' Complaint address both open and concealed carry restrictions, any potential dismissal of those paragraphs against the State can apply only to its concealed carry restrictions.

## II. PLAINTIFFS ALLEGED A VALID CLAIM THAT DEFENDANTS' DISPARATE TREATMENT CONCERNING THE EXERCISE OF THE RIGHT TO BEAR ARMS VIOLATES THE EQUAL PROTECTION CLAUSE

Separate and apart from their Second Amendment claim, Plaintiffs have alleged that Defendants' unequal treatment of the right to bear arms outside the home violates the Equal Protection Clause.  Compl. ¶¶ 81-87. At its core, the Equal Protection Clause is a directive that "all persons similarly situated should be treated alike." *City of Cleburne, Tex., v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). "[W]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which invade or restrain them must be closely scrutinized." *Hussey v. City of Portland*, 64 F.3d 1260, 1265 (9th Cir. 1995) (quoting *Harper v. Va. Bd. of Elections,* 383 U.S. 663, 670 (1966), and citing *Kramer v. Union Free School Dist.*, 395 U.S. 621, 633 (1969)). Such classifications "will be sustained only if they are suitably tailored to serve a compelling state

interest." *Cleburne*, 473 U.S. at 440 (citations omitted). Accordingly, Plaintiffs have properly alleged that Defendants' carry scheme authorizes certain individuals to exercise the right to bear arms beyond the home, while denying that fundamental right to others, with no valid basis for the classification.

Defendants argue that Plaintiffs' Equal Protection claim should be dismissed because they are simply repeating their Second Amendment claim. State Mot. 8:8-11; McDonnell Mot. 6:10-13. Defendants are mistaken. Plaintiffs' Equal Protection claim is that—even if Defendants could justify completely prohibiting all people from carrying a firearm outside the home—policies that authorize some individuals to exercise the right to bear arms beyond the home, while denying it to others, violate the Equal Protection Clause unless Defendants establish a valid reason for the disparate treatment.

Misunderstanding the nature of Plaintiffs' Equal Protection claim, Defendants rely heavily on a recent Ninth Circuit decision affirming the dismissal of an Equal Protection claim that the panel described as "a Second Amendment claim dressed in Equal Protection clothing." *Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016) (citing *Orin v. Barclay*, 272 F.3d 1207, 1213 n. 3 (9th Cir. 2001)). In *Teixeira*, several individuals sought to operate a firearm retail business at a location that was restricted by a local zoning ordinance prohibiting *anyone* from opening a firearm retail business within certain parameters. 822 F.3d at 1049-52. These individuals and several organizations challenged the ordinance on both Second Amendment and Equal Protection grounds. After concluding that "this is not a situation where one group is being denied a right while another" is not, the Ninth Circuit acknowledged that plaintiffs' Equal Protection claim would be "more appropriately analyzed under the Second Amendment." *Id*. at 1052.

Unlike *Teixeira*, Plaintiffs' Equal Protection challenge does not raise issues identical to their Second Amendment claim. While *Teixeira* challenged the denial of an alleged Second Amendment right to sell firearms at retail, the zoning

11

ordinance prohibited *any* business owner from opening their doors to sell firearms in the restricted areas. *Id*. Here, by contrast, Plaintiffs' Equal Protection claim is not simply challenging the denial of their right to carry a firearm outside the home for self-defense. Rather, it challenges Defendants' confinement of Plaintiffs' right to bear arms to the home, while allowing others to exercise that same right outside the home. Compl. ¶¶ 4, 52, 81-87. Plaintiffs' Equal Protection claim is thus distinct and *Teixeira* does not warrant its dismissal.

Moreover, the Supreme Court has made clear that an Equal Protection claim properly lies in such circumstances. Even where the government might validly argue that it does not have to permit the exercise of a constitutional right in a particular context or setting—once that right is afforded to some, the government bears the burden of justifying its preferential treatment. *See Kramer*, 395 U.S. at 628-29, 631. In *Kramer*, the Supreme Court struck down a law limiting eligible voters in school district elections to property owners and parents of school children. *Id*. at 622. The Court held that, although school districts are not required to select their board members via elections, "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Id*. at 629 (citing *Harper*, 383 U.S. at 665). Because the right to vote is fundamental, once it is afforded, any classification made that bars certain people from exercising that right must satisfy appropriate constitutional scrutiny under the Equal Protection Clause. *Id*. at 626-27. Similarly, because the right to bear arms is fundamental, *Heller*, 554 U.S. at 595, even if the exercise of that right might permissibly be prohibited outside the home, once that right is afforded to some, the basis for the government's denial of that right "must be closely scrutinized." *Hussey*, 64 F.3d at 1265 (quoting *Harper*, 383 U.S. at 670).

Here, Defendants' restrictions distinguish between individuals who can publicly carry a concealed firearm for self-defense, and those who cannot, based upon their demonstration of "good cause" interpreted by Defendant McDonnell as

12

"convincing evidence of a clear and present danger." Compl. ¶¶ 56-57. But that distinction cannot withstand any level of heightened scrutiny. Under Defendants' scheme, a gang member threatened by a rival could meet the "good cause" standard, but a woman who walks home from work late at night in a high-crime neighborhood could not. And the State's standard-less "good cause" criterion authorizes local officials to subjectively enforce different standards that allow some Californians to carry a firearm for self-defense, while others cannot. Further, State law distinguishes between individuals who can publicly carry an exposed firearm for self-defense, and those who cannot, based upon the population of their county of residence. Compl. ¶¶ 4, 53. Because Defendants' restrictions recognize the right to bear arms outside the home by individuals who can satisfy these classifications, but deny the same exercise of the right to others, Defendants bear the burden of justifying their disparate treatment of these classes under heightened scrutiny.

Defendants also argue that Plaintiffs cannot allege an Equal Protection claim concerning Defendants' concealed carry restrictions because the Ninth Circuit has determined that the Second Amendment does not protect a free-standing right to carry a concealed firearm. State Mot. 5-6; McDonnell Mot. 3-5. But as explained above, *Peruta* does *not* foreclose Plaintiffs' challenge to Defendants' statutes and policies that collectively destroy their ability to publicly carry a firearm for self-defense in any manner whatsoever. *See supra,* Part I. Likewise, it does not foreclose Plaintiffs' Equal Protection challenge to Defendants' concealed carry restrictions that, together with California's open carry restrictions, bar Plaintiffs from carrying a firearm for self-defense, while authorizing individuals who have been granted a Carry License to do so. Compl. ¶¶ 56-66, 81-87.[3]

---

[3] As with Plaintiffs' Second Amendment claim, if this Court determines it is bound to dismiss Plaintiffs' challenge to Defendants' concealed carry restrictions, Plaintiffs do not waive their Equal Protection claim stemming from Defendants' concealed carry restrictions. Any potential dismissal of this portion of Plaintiffs'

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Finally, the State argues that Plaintiffs failed to sufficiently allege that California's open carry laws prohibit Plaintiffs from openly carrying a firearm for self-defense—while permitting others to exercise that right—without valid justification for the distinction. State Mot. 8-9. This argument fails on its face. Plaintiffs allege that Defendants' comprehensive open and concealed carry restrictions prohibit them "from publicly carrying a firearm for self-defense *in any manner*, while allowing other law-abiding citizens to carry a firearm for self-defense." Compl. ¶¶ 81-87.

Indeed, California law expressly prohibits Plaintiffs from obtaining a permit to openly carry a firearm for self-defense because they reside in a county with a population exceeding 200,000, while authorizing residents of other counties to obtain a license to openly carry a firearm. Compl. ¶¶ 4, 53. To the extent that the right to publicly bear arms may only be accommodated through open carry under *Peruta*, the State cannot afford some California residents a means of exercising the right, while categorically denying it to others, without justifying the basis for its disparate treatment. And Plaintiffs have alleged that Defendants cannot justify this classification, which unequally deprives Plaintiffs of their right to publicly bear arms for self-defense, while affording it to others. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973); Compl. ¶¶ 85-86.

As the State acknowledges, discovery will appropriately provide more detail concerning the specifics of Plaintiffs' open carry claims. State Mot. 5, n.1. At the pleadings stage, however, where inferences are drawn in the light most favorable to the Plaintiffs, *Barker v. Riverside Cty. Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009), Plaintiffs' allegations satisfy the minimal notice requirements of Rule 8(a)(2). In any light, Plaintiffs' Complaint provides fair notice that Defendants'

---

Equal Protection claim should be limited to the allegations concerning Defendants' concealed carry restrictions.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

open-carry laws—which on their face prohibit Plaintiffs from openly carrying a firearm for self-defense, while permitting others to do so—create a classification concerning the exercise of a fundamental right that cannot be justified. If the Court disagrees, Plaintiffs should be afforded an opportunity to amend.

In sum, Plaintiffs have alleged a valid claim that Defendants' disparate treatment concerning their accommodation of the right to bear arms in public violates the Fourteenth Amendment. The Court should deny Defendants' request to dismiss Plaintiffs' Equal Protection claim, in whole or in part.

## CONCLUSION

While the right to bear arms, like other constitutional rights, may be subject to regulation, it is not subject to elimination. To this end, Plaintiffs' have alleged a valid claim that Defendants' open and concealed carry policies—which collectively destroy Plaintiffs' right to publicly bear arms for self-defense—violate the Second Amendment. The Court should deny Defendants' requests to dismiss the concealed carry aspects of their Second Amendment challenge. If the Court is not so inclined, any potential dismissal of this claim against the State should be limited to the State's concealed carry restrictions.

Finally, Plaintiffs' Equal Protection claim is distinct and not barred as a matter of law. The Court should reject Defendants' invitation to dismiss this claim. If the Court finds this claim deficient, Plaintiffs respectfully request leave to amend.

Dated: December 1, 2016          **MICHEL & ASSOCIATES, P.C.**


/s/C.D. Michel
C.D. Michel
Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

MICHELLE FLANAGAN, SAMUEL GOLDEN, DOMINIC NARDONE, JACOB PERKIO, and THE CALIFORNIA RIFLE & PISTOL ASSOCIATION,

        Plaintiffs,

    v.

CALIFORNIA ATTORNEY GENERAL KAMALA HARRIS, in her official capacity as Attorney General of the State of California, SHERIFF JAMES McDONNELL, in his official capacity as Sheriff of Los Angeles County, California, and DOES 1-10,

        Defendants.

Case No.: 2:16-cv-06164-JAK-AS

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' OMNIBUS   OPPOSITION TO DEFENDANT HARRIS' MOTION TO DISMISS COMPLAINT AND DEFENDANT McDONNELL'S MOTION TO DISMISS COMPLAINT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kamala D. Harris
Attorney General of California
Stepan A. Haytayan
Supervising Deputy Attorney General
P. Patty Li
Deputy Attorney General
Jonathan M. Eisenberg
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013

*Attorneys for Defendant Kamala D. Harris, Attorney General of the State of California*

/ / /
/ / /

1

Mary C. Wickham, County Counsel
Jennifer A.D. Lehman, Assistant
County Counsel
Alexandra B. Zuiderweg, Deputy
County Counsel
Lana Choi, Senior Associate County
Counsel
648 Kenneth Hahn Hall of
Administration
500 West Temple Street
Los Angeles, CA 90012-2713

*Attorneys for Defendant Sheriff James McDonnell*

     I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2016.

/s/ C.D. Michel
C.D. Michel
Attorney for Plaintiffs

2
CERTIFICATE OF SERVICE