UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

MICHELLE FLANAGAN, ET AL.,            )
                                      )
              PLAINTIFFS,             )
                                      )
VS.                                   ) CV16-06164-JAK
                                      )
KAMALA HARRIS, ET AL.,                )
                                      )
              DEFENDANTS.             )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, NOVEMBER 6, 2017; 8:30 AM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFFS:      CLINTON B. MONFORT
                          MICHEL AND ASSOCIATES PC
3                         180 EAST OCEAN BOULEVARD
                          SUITE 200
4                         LONG BEACH, CA 90802

5                         SEAN ANTHONY BRADY
                          MICHEL AND ASSOCIATES PC
6                         180 EAST OCEAN BOULEVARD
                          SUITE 200
7                         LONG BEACH, CA 90802

8

9    FOR DEFENDANTS:      JONATHAN MICHAEL EISENBERG
                          OFFICE OF THE
10                        CALIFORNIA ATTORNEY GENERAL
                          GOVERNMENT LAW SECTION
11                        300 SOUTH SPRING STREET
                          SUITE 1702
12                        LOS ANGELES, CA 90013

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 6, 2017

 2                          8:30 AM

 3                          - - - - -

 4

 5

 6          THE COURT:  ITEM 6, CV16-6164, FLANAGAN V.

 7   CALIFORNIA ATTORNEY GENERAL KAMALA HARRIS.

 8              WOULD YOU STATE YOUR APPEARANCES, PLEASE.

 9          MR. BRADY:  GOOD MORNING, YOUR HONOR.  SEAN

10   BRADY ON BEHALF OF THE PLAINTIFFS.  ACCOMPANIED BY

11   CLINTON MONFORT.

12          THE COURT:  GOOD MORNING.

13          MR. EISENBERG:  GOOD MORNING, YOUR HONOR.

14   JONATHAN EISENBERG, DEPUTY ATTORNEY GENERAL, FOR THE

15   ATTORNEY GENERAL XAVIER BECERRA.

16          THE COURT:  GOOD MORNING, MR. EISENBERG.

17              THANK YOU ALL FOR WAITING.  I KNOW YOU'VE

18   HAD A LONG WAIT.

19              WE'RE HERE ON THE CROSS-MOTIONS FOR

20   SUMMARY JUDGMENT IN THIS MATTER.

21              MY TENTATIVE VIEW IS, THAT I WOULD GRANT

22   THE DEFENDANT'S MOTION AND DENY THE PLAINTIFF'S MOTION.

23              HAVING REVIEWED THE MATTER, I THINK THAT

24   THE -- GIVEN THAT THE CORE PURPOSE OF THE SECOND

25   AMENDMENT I THINK HAS BEEN SHOWN TO HAVE BEEN
```

```
1    PROTECTION OF -- HOME PROTECTION, AND GIVEN THAT THE

2    STATUTES INVOLVED CONCERNING RESTRICTING OPEN CARRY

3    DOES NOT DIRECTLY APPLY TO THAT, AND GIVEN THAT THERE

4    ARE EXCEPTIONS UNDER THE STATUTE ALLOWING FOR CERTAIN

5    OPEN CARRYING FOR THE IMMEDIATE SAFETY NEEDS OF AN

6    INDIVIDUAL, LAW ENFORCEMENT, SECURITY GUARDS AND

7    CERTAIN OTHER EXCEPTIONS, I THINK THAT THIS -- AND,

8    ALSO, GIVEN THAT THE -- THERE'S PERMITTING THE

9    TRANSPORT OF THESE WEAPONS IF THEY ARE LOCKED AND

10   UNLOADED, I THINK FOR THESE REASONS, UNDER THE

11   CONTROLLING AUTHORITY, A STANDARD OF INTERMEDIATE

12   SCRUTINY APPLIES.

13            THE PARTIES HAVE SUBMITTED COMPETING

14   EVIDENCE IN SUPPORT OF AND IN OPPOSITION TO THE

15   CROSS-MOTIONS.

16            AND IN A DIFFERENT -- IN CERTAIN

17   CONTEXTS, I'LL HEAR FROM YOU ON THIS, THE FACT OF

18   COMPETING POSITIONS ON EVIDENCE -- FOR EXAMPLE, THERE'S

19   TWO DIFFERENT LAW ENFORCEMENT OFFICERS WHO GIVE

20   DIFFERENT OPINIONS.  THE COMPETING EVIDENCE IN A

21   SUMMARY JUDGMENT MOTION IN A DIFFERENT CONTEXT MIGHT

22   LEAD TO THE CONCLUSION THAT THERE'S A TRIABLE ISSUE.

23   BUT I THINK, HERE, IN THIS CONTEXT, THE APPELLATE

24   COURTS THAT HAVE LOOKED AT THESE ISSUES IN THAT SAME

25   CONTEXT HAVE NOT CONCLUDED THAT THAT'S THE TRIABLE
```

```
1    ISSUE OF THE SAME TYPE BECAUSE THE ISSUE IS, WHAT --
2    BEING MEASURED IS THE LEGISLATIVE ACTION.  AND THE
3    COURTS HAVE BEEN RELUCTANT TO DO MORE THAN -- NOT
4    "RELUCTANT TO," BUT TO ACKNOWLEDGE THAT BECAUSE IT HAS
5    BEEN LEGISLATIVE ACTION THAT'S BEING MEASURED, THE TEST
6    OF -- UNDER THE INTERMEDIATE STANDARD IS NOT TO REACH A
7    CONCLUSIVE DETERMINATION, BUT TO DETERMINE WHETHER A
8    LEGISLATOR -- WHETHER THE STATUTE IS REASONABLY
9    SUPPORTED BY WHAT THE LEGISLATORS COULD HAVE
10   CONSIDERED.
11              SO WE'RE HERE IN TERMS OF THE
12   INTERMEDIATE STANDARD, THE IMPORTANT GOVERNMENT
13   OBJECTIVE OF REDUCING THE BURDENS ON THE POLICE AND THE
14   POTENTIAL PUBLIC ALARM AND PROMOTING SAFETY ARE --
15   HAVE BEEN -- EVIDENCE OF THOSE HAVE BEEN PRESENTED.
16              WHETHER THERE'S A REASONABLE FIT BETWEEN
17   THE RESTRICTIONS ON OPEN CARRY AND THE INTEREST IN
18   PROTECTING PUBLIC SAFETY, THIS IS WHERE THE EXPERT
19   REPORTS HAVE BEEN PRESENTED.  PROFESSOR DONOHUE'S
20   REPORT, THE NATIONAL BUREAU OF ECONOMIC RESEARCH PAPER,
21   THAT THE RIGHT TO CARRY LAWS AND VIOLENT CRIME PROVIDES
22   SOME EVIDENCE THAT APPLYING TWO STATISTICAL
23   METHODOLOGIES CONCLUDED THAT THE ENACTMENT OF RIGHT TO
24   CARRY LAWS INCREASES VIOLENT CRIMES.
25              AND IN TERMS OF PUBLIC SAFETY, THERE'S
```

1  THE EVIDENCE PRESENTED BY THE DEFENDANT OF THE COVINA

2  POLICE CHIEF RANEY WHO OPINES THAT RESTRICTIONS ON OPEN

3  CARRY GREATLY ENHANCE PUBLIC SAFETY.

4  THE PLAINTIFFS HAVE PRESENTED THREE

5  OTHER, AS I MENTIONED EARLIER, COMPETING EXPERTS,

6  PROFESSOR KLECK, MR. ROSSI, A RETIRED LAW ENFORCEMENT,

7  AND MR. COOKE, A FORMER CHIEF OF POLICE AND A

8  COLORADO -- A FORMER -- A COLORADO LEGISLATOR.  THESE

9  DO PROVIDE COMPETING POSITIONS WITH RESPECT TO THE

10  RELATIONSHIP OF OPEN CARRY LAWS AND VIOLENT CRIMES AND

11  AS WELL AS THE PUBLIC SAFETY ISSUE.  AND THEY DO

12  PROVIDE OPINIONS THAT ARE DIFFERENT THAN THOSE THAT

13  HAVE BEEN PRESENTED BY THE DEFENDANT.

14  BUT MY VIEW AS I -- MY TENTATIVE VIEW, AS

15  I HAVE EXPLAINED, IS THAT IT'S DIFFERENT -- THERE'S A

16  DIFFERENT TEST HERE IN THE RULE -- IN THE SUMMARY

17  JUDGMENT CONTEXT GIVEN THAT THIS IS A CHALLENGE TO

18  LEGISLATION.

19  SO, MR. BRADY, LET ME HEAR FROM YOU,

20  PLEASE.

21  MR. BRADY:  THANK YOU, YOUR HONOR.

22  I THINK THE INITIAL POINT THAT NEEDS TO

23  BE ADDRESSED IS THE QUESTION OF WHAT IS THE CORE OF THE

24  SECOND AMENDMENT?

25  AND AS YOUR HONOR INDICATED, YOU BELIEVE

```
1    THAT IT IS LIMITED TO BEING WITHIN ONE'S HOME.  AND I
2    JUST DON'T THINK THAT HELLER GIVES ANY REASON TO
3    PROVIDE THAT CONCLUSION BY, IT NEVER QUALIFIES -- WHEN
4    IT TALKS ABOUT WHAT IS THE CENTRAL COMPONENT OF THE
5    SECOND AMENDMENT, IT SIMPLY SAYS "SELF-DEFENSE."  IT
6    GOES ON FOR 50 PAGES OF ANALYSIS OF THE SCOPE OF THE
7    SECOND AMENDMENT TALKING ABOUT SELF-DEFENSE AS THE
8    CORE.  AND IT'S ONLY WHEN YOU GET -- DURING WHICH IT
9    ONLY MENTIONS "HOME" OR "HOMESTEAD" A GRAND TOTAL OF
10   THREE TIMES.  AND IT ONLY TALKS ABOUT THE HOME WHEN
11   IT'S APPLYING THAT ANALYSIS TO AN ORDINANCE THAT'S
12   RESTRICTING CONDUCT IN THE HOME.  IT WOULD BE NATURAL
13   THAT IT WOULD BE LIMITING ITS DISCUSSION TO HOME-BOUND
14   ACTIVITY BECAUSE IT HAD NO OCCASION TO TALK ABOUT
15   PUBLIC ACTIVITY.
16                BUT IF THAT 50 PAGES OF ANALYSIS, IT
17   REPEATEDLY TALKS ABOUT -- IT SAYS THAT A SECOND
18   AMENDMENT TALKS ABOUT A RIGHT TO POSSESS AND CARRY.  IT
19   SAYS THAT, AT THE TIME OF THE FOUNDING, THAT IT WAS
20   UNDERSTOOD THAT THIS RIGHT PROTECTED AGAINST BOTH
21   PRIVATE AND PUBLIC VIOLENCE.  AND SO I THINK IT'S A
22   CONFLATION OF THE SCOPE OF THE RIGHT WITH THE HOLDING
23   OF THE HELLER CASE.
24                I MEAN, WHEN THE HELLER COURT WAS TALKING
25   ABOUT THE SCOPE OF THE RIGHT, THE ONLY COMPARISON OF
```

```
1    SUCH A DRASTIC RESTRICTION ON THE SECOND AMENDMENT, AS

2    THE -- AS THE DISTRICT OF COLUMBIA'S ORDINANCE -- WHICH

3    PRETTY MUCH BANNED FIREARMS IN THE HOME.  WHEN IT

4    SEARCHED IN VEIN FOR A SIMILAR RESTRICTION, THE ONLY

5    ONE THAT THE COURT FOUND WERE RESTRICTIONS ON CARRYING

6    IN PUBLIC.

7              THE COURT:  HOW DOES YOUR POSITION -- DO YOU

8    ADDRESS THIS ISSUE -- CHOVAN, THE NINTH CIRCUIT CASE

9    FROM 2013, HOW DOES THAT AFFECT YOUR POSITION?

10             MR. BRADY:  SURE.

11                  I THINK THE ONLY PART OF CHOVAN, BECAUSE

12   IT'S TALKING ABOUT FELONS' RIGHTS VERSUS THE CORE RIGHT

13   OF KEEPING AND BEARING -- AND, THERE, BASICALLY, HELLER

14   MADE CLEAR THAT THERE ARE CERTAIN PEOPLE AND ACTIVITIES

15   THAT ARE GOING TO BE EITHER -- THAT ARE RESTRICTIONS ON

16   WHICH ARE GOING TO BE PRESUMPTIVELY LAWFUL.  WHETHER

17   THAT MEANS THEY'RE OUTSIDE THE SCOPE OF THE SECOND

18   AMENDMENT OR THAT IT'S PRESUMED THEY'RE GOING TO MEET

19   WHATEVER APPLICABLE STANDARD OF REVIEW APPLIES, THEY

20   LEFT THAT QUESTION UNANSWERED, UNFORTUNATELY.

21                  BUT CHOVAN BASICALLY LAYS OUT A TEST

22   WHICH SAYS, IF YOU'RE AT THE CORE OF THE SECOND --

23   FIRST OFF, ARE YOU WITHIN THE SCOPE OF THE SECOND

24   AMENDMENT?  THAT'S THE FIRST QUESTION.

25                  AND IF YOU ARE WITHIN THE SCOPE OF THE
```

1    SECOND AMENDMENT -- WHICH I THINK IS CRITICAL HERE.

2    WHETHER I CONVINCE YOU THAT WE'RE IN THE CORE OF THE

3    SECOND AMENDMENT OR NOT, I DON'T THINK IT MATTERS

4    BECAUSE, AT THE END OF THE DAY, ONCE WE ARE AT STEP ONE

5    OF CHOVAN AND WE ARE -- AND WE ARE IN -- WITHIN THE

6    SCOPE OF THE SECOND AMENDMENT, GENERALLY PROHIBITING

7    ACTIVITY TO LAW-ABIDING PEOPLE THAT IS WITHIN THAT

8    PROTECTION IS SIMPLY NOT AN OPTION FOR THE STATE

9    REGARDLESS OF WHAT ANALYTICAL FRAMEWORK, WHETHER IT'S

10   WHAT WE SAY, YOU KNOW, IT'S A BAN, YOU CAN JUST STRIKE

11   IT DOWN OR IF IT'S STRICT SCRUTINY.

12              BUT EVEN UNDER INTERMEDIATE SCRUTINY, THE

13   COURT CAN NO -- COULD NEVER SAY, OH, COMMERCIAL SPEECH

14   IS A PROBLEM, AND WE'RE GOING TO BAN IT EVEN THOUGH IT

15   IS NOT WITHIN THE CORE OF THE FIRST AMENDMENT.  BUT

16   THAT'S EFFECTIVELY WHAT IS HAPPENING HERE.  PLAINTIFFS

17   HAVE NO MEANINGFUL WAY TO CARRY ARMS IN PUBLIC IN

18   CALIFORNIA FOR SELF-DEFENSE PURPOSES.

19              AND YOUR HONOR MENTIONED "TRANSPORTING."

20   HAVING A FIREARM IN A LOCKED CONTAINER, UNLOADED,

21   THAT'S ONLY ALLOWED TO BE TRANSPORTED TO AND FROM

22   SPECIFIC LOCATIONS IS NOT THE RIGHT TO BE ARMED AND

23   READY IN CASE OF CONFRONTATION THAT THE HELLER COURT

24   ARTICULATED.

25              THE COURT:  DOES THE STATUTE PERMIT A PERSON

```
 1    TO RECEIVE PERMISSION TO HAVE OPEN CARRY WHERE PERSONAL

 2    SAFETY ISSUES WARRANT THAT OUTSIDE THE HOME?

 3         MR. BRADY:  SO I THINK WHAT YOUR HONOR IS

 4    REFERENCING IS THE AFFIRMATIVE DEFENSE TO A -- TO BEING

 5    CHARGED WITH A VIOLATION OF THE RESTRICTION ON HAVING A

 6    FIREARM IN PUBLIC.

 7              AND THERE'S A COUPLE REASONS WHY THAT IS

 8    NOT SUFFICIENT TO ACCOMMODATE THE MANDATES OF THE

 9    SECOND AMENDMENT RIGHT TO BEAR ARMS.  AND THE INITIAL

10    ONE IS THAT, LIKE I WAS JUST ABOUT TO SAY, HELLER

11    RECOGNIZES A RIGHT TO KEEP AND BEAR ARMS IN -- I'M

12    SORRY.  TO BE ARMED AND READY.  THERE'S A LOT OF "ARMS"

13    AND "BEARS."

14              TO BE ARMED AND READY IN CASE OF CONFLICT

15    WITH ANOTHER PERSON, THAT IS THE RIGHT TO BE ARMED IN

16    CASE SOMETHING HAPPENS.

17              THE AFFIRMATIVE DEFENSE THAT CALIFORNIA

18    PROVIDES TO A VIOLATION OF ITS CARRY BAN FLIPS THAT ON

19    ITS HEAD.  AND, SURE, IT RECOGNIZES A RIGHT TO

20    SELF-DEFENSE AFTER THE FACT, BUT IT'S NOT ALLOWING

21    SOMEBODY TO BE ARMED AND READY PRIOR TO THAT.  AND THAT

22    IS WHAT THE RIGHT REQUIRES THAT BE RESPECTED.

23              THE NINTH CIRCUIT IN THE PERUTA PANEL

24    SAID, WHERE THE PERSON WILL FIND THE FIREARM TO BE ABLE

25    TO ENJOY THAT AFFIRMATIVE DEFENSE IS LEFT TO
```

```
 1    PROVIDENCE.
 2              AND DESPITE PLAINTIFF'S LAYING IT OUT IN
 3    THEIR INITIAL MOTION WHAT THEY BELIEVE THE STATE WILL
 4    ARGUE, THAT THEY WILL SAY THIS AFFIRMATIVE DEFENSE IS
 5    SUFFICIENT, AND INVITING THEM TO EXPLAIN WHERE A
 6    FIREARM COMES FROM FOR SOMEBODY TO ASSERT THAT
 7    AFFIRMATIVE DEFENSE, THEY DIDN'T ANSWER IN THEIR
 8    OPPOSITION.  WE, AGAIN, PUT IT IN OUR OPPOSITION TO
 9    THEIR MOTION FOR SUMMARY JUDGMENT.  ON REPLY, SILENCE.
10    AND THAT'S BECAUSE THERE JUST IS NO -- IT IS NOT A
11    MEANINGFUL EXCEPTION, OTHER THAN IT IS AN
12    ACKNOWLEDGMENT, IF ANYTHING, THAT THERE IS SOME VALUE
13    TO ALLOWING SOMEBODY TO DEFEND THEMSELVES IF THE NEED
14    ARISES.  AND IT'S BASICALLY THE GOVERNMENT SAYING,
15    OKAY, YOU KNOW, IF YOU DID A NAUGHTY OR YOU HAPPEN TO
16    BE IN THE LUCKY POSITION TO BE TRANSPORTING YOUR
17    FIREARM LAWFULLY OR A GUN JUST HAPPENS TO BE THERE AND
18    YOU'RE ABLE TO DEFEND YOURSELF, FOR PUBLIC POLICY
19    REASONS, WE'RE GOING TO LOOK THE OTHER WAY AND NOT
20    CONVICT YOU.  BUT THERE IS NO OTHER RIGHT THAT YOU CAN
21    POINT TO THAT SAYS THAT IT'S LIMITED TO AN OPPORTUNITY
22    TO REQUEST FORGIVENESS FROM THE GOVERNMENT.
23              THE COURT:  NO, I UNDERSTAND.
24              MR. BRADY:  SO I -- GOING ON TO THE EVIDENCE,
25    I THINK, LIKE I SAID, THIS CASE ENDS AT QUESTION ONE.
```

```
 1    AS SOON AS YOU DECIDE THAT THE SECOND AMENDMENT DOES

 2    PROTECT SOME RIGHT TO BEAR ARMS OUTSIDE THE HOME,

 3    WHETHER IT'S WITHIN THE CORE OR NOT, CALIFORNIA DOES

 4    NOT RESPECT THAT RIGHT AT ALL.  AND IT MUST BE STRICKEN

 5    REGARDLESS OF WHETHER INTERMEDIATE SCRUTINY OR RATIONAL

 6    BASIS IS OFF THE TABLE.  BUT THERE'S NOT THE FIT.

 7                  EVEN IF THE EVIDENCE THAT THE STATE HAS

 8    SUBMITTED CONVINCINGLY AND INDISPUTABLY SHOWED THAT

 9    THIS BAN WORKED, IT WOULDN'T MATTER.  AND WE DISPUTE

10    THAT IT DOES, OBVIOUSLY.  AND I CAN GO THROUGH THE

11    EVIDENCE, IF YOUR HONOR WANTS.  BUT I DON'T THINK WE

12    NEED TO BECAUSE WE DON'T NEED TO GO TO THE EVIDENCE.

13    IT WOULD BE THE EQUIVALENT OF THE STATE PROVIDING A

14    STUDY THAT RESTRICTING OFFICERS UNDER THE FOURTH

15    AMENDMENT FROM BEING ABLE TO SEARCH PEOPLE THAT THEY

16    THOUGHT WERE ENGAGED IN CRIMINAL ACTIVITY WOULD

17    INCREASE PUBLIC SAFETY, AND SO WE'RE JUST GOING TO DO

18    AWAY WITH THAT PESKY WARRANT REQUIREMENT OR PROBABLE

19    CAUSE REQUIREMENT BECAUSE PUBLIC SAFETY DICTATES TO --

20    YOU KNOW, WOULD BE FURTHERED BY DOING THAT.  THAT IS

21    JUST NOT THE WAY THAT CONSTITUTIONAL RIGHTS WORK.  IT

22    IS -- BY DEFINITION, A RIGHT IS A RESTRAINT ON THE

23    GOVERNMENT.  AND, BY DEFINITION, THERE ARE GOING TO BE

24    CONTROVERSIES OVER WHAT IS GOOD AND BAD POLICY.

25                  THE COURT:  JUST SO I UNDERSTAND, IS IT YOUR
```

```
1    POSITION THAT, UNDER THE SECOND AMENDMENT, THERE'S A

2    PER SE RIGHT OPENLY TO CARRY A WEAPON?

3              MR. BRADY:  NO, YOUR HONOR.

4              I THINK THAT WE HAVE MADE IT CLEAR THAT

5    WHAT WE'RE SAYING IS, THERE IS A RIGHT TO BEAR ARMS FOR

6    SELF-DEFENSE PURPOSES IN SOME WAY.  WE'RE NOT JUST --

7    AS IN THE -- THE PERUTA CASE WAS CONSTRUED BY THE NINTH

8    CIRCUIT AS REQUESTING ONLY THE ABILITY TO CARRY

9    CONCEALED.  BECAUSE OF THAT, DESPITE THE PLAINTIFFS IN

10   THAT CASE - AND I KNOW BECAUSE I WAS COUNSEL FOR THEM -

11   REPEATEDLY SAYING -- MAKING CLEAR THAT WE'RE NOT

12   SEEKING A RIGHT TO CARRY CONCEALED, WE'RE NOT SEEKING A

13   RIGHT TO CARRY OPEN, WE'RE SEEKING SOME WAY -- AND IT'S

14   UP TO THE STATE.  IF THEY WANT TO ALLOW CONCEALED

15   CARRY, THEY CAN ALLOW CONCEALED CARRY.  IF THEY WANT TO

16   ALLOW OPEN CARRY, THEY CAN ALLOW OPEN CARRY.  BUT WHAT

17   THEY CAN'T DO IS BAN BOTH, AND THEN SAY, WELL, WE HAVE

18   PUBLIC SAFETY REASONS THAT ARE FURTHERED BY BANNING

19   CONCEALED CARRY.  SO WE'RE NOT GOING TO ALLOW THAT.

20   AND WE ALSO NOW HAVE PUBLIC SAFETY REASONS FOR BANNING

21   OPEN CARRY AND, THUS, ELIMINATING THE RIGHT.  THAT'S

22   JUST --

23              THE COURT:  BACK TO MY QUESTION.

24              UNDER WHAT YOU HAVE JUST SAID, IS IT YOUR

25   POSITION THAT, IF THE STATE ENACTED A STATUTE WITH
```

```
1    RESPECT TO PLACING CERTAIN RESTRICTIONS ON OPEN CARRY,

2    BUT NOT BARRING IT ENTIRELY EXCEPT AS TO LAW

3    ENFORCEMENT, SECURITY GUARDS AND SO ON, THAT THAT MIGHT

4    BE PERMITTED UNDER THE SECOND AMENDMENT?

5              MR. BRADY:  JUST TO CLARIFY, ARE WE TALKING

6    ABOUT A WAY IN WHICH PLAINTIFFS WOULD BE ABLE TO CARRY?

7              THE COURT:  WELL, THAT'S -- YES, THAT'S MY

8    QUESTION.  WELL, POTENTIALLY.

9                 WHAT I'M TRYING TO UNDERSTAND IS, WHEN

10   YOU SAY IT'S UP TO THE -- YOU'RE REJECTING THAT THE

11   AFFIRMATIVE DEFENSE THAT'S BEEN PROVIDED IS SUFFICIENT.

12   OKAY.  I UNDERSTAND THAT ARGUMENT.

13                 MY QUESTION IS, WHAT STATUTE -- WHAT

14   STATUTORY ACTION DO YOU CONTEND THE STATE COULD TAKE,

15   IF ANY, THAT WOULD IMPOSE RESTRICTIONS ON OPEN CARRY

16   AND STILL PASS MUSTER UNDER THE SECOND AMENDMENT?

17             MR. BRADY:  SURE.  I THINK PROHIBITING

18   FIREARMS IN THIS BUILDING, FOR EXAMPLE.  THE HELLER

19   COURT EXPRESSLY SAID THAT THERE ARE CERTAIN SENSITIVE

20   PLACES LIKE SCHOOLS AND GOVERNMENT BUILDINGS THAT ARE

21   EITHER OUTSIDE THE SCOPE OF THE SECOND AMENDMENT.

22   ANYWAY, THEY WOULD BE PRESUMPTIVELY LAWFUL, THOSE TYPES

23   OF RESTRICTIONS.

24                 WE CAN GET INTO THE DETAILS IN A LATER

25   CASE ON WHERE IT IS AND IS NOT A SENSITIVE PLACE.  BUT
```

1    THE STATE DOESN'T ARGUE THAT THERE'S -- THAT WE'RE

2    ALLOWED TO CARRY IN NONSENSITIVE PLACES.  THEY HAVE

3    NONSENSITIVE CITIES, NONSENSITIVE COUNTIES, IS WHAT

4    THEY'RE ARGUING.  AND THAT'S NOT WHAT HELLER CALLS FOR.

5            I THINK TO GO TO YOUR QUESTION SOMEWHAT,

6    BECAUSE I BELIEVE IF YOU WERE TO GO -- CHANGE YOUR MIND

7    ON YOUR TENTATIVE AND TO RULE IN PLAINTIFF'S FAVOR,

8    THAT YOU MIGHT HAVE SOME HARDSHIPS IN FASHIONING RELIEF

9    TO ADDRESS THIS SORT OF DYNAMIC OF OPEN VERSUS

10   CONCEALED CARRY.  BECAUSE, TO BE CLEAR, PLAINTIFFS ARE

11   NOT SAYING THAT THE STATE HAS TO ALLOW EVERYBODY TO

12   OPEN CARRY, NOR ARE THEY SAYING THEY HAVE TO ALLOW

13   EVERYBODY TO GET A CONCEALED CARRY LICENSE.  BUT THEY

14   DO HAVE TO DO ONE OF THOSE.  AND THERE ARE SEVERAL

15   COUNTIES IN THIS STATE THAT DO RESPECT THE RIGHT TO

16   CARRY BY ISSUING CONCEALED WEAPON PERMITS.  AND SO I

17   CAN IMAGINE THIS COURT BEING ABLE TO FASHION RELIEF

18   WHEREBY THIS STATUTE, THE OPEN CARRY BAN, SHOULD BE

19   ENJOINED EXCEPT WHERE -- IN THOSE COUNTIES WHERE AN

20   INDIVIDUAL HAS ACCESS TO WHAT IS CALLED A "SHALL ISSUE

21   CONCEALED WEAPON PERMIT SYSTEM."

22            AND IF THE STATE DOESN'T LIKE THAT, THEN

23   THEY CAN GO AND CHANGE THINGS HOW THEY WANT IT.  BUT

24   THEY CAN'T JUST SIMPLY BAN EVERYTHING AND SAY, WELL,

25   TOUGH COOKIES, YOU DON'T GET TO EXERCISE YOUR SECOND

1    AMENDMENT RIGHT.

2              THE COURT:  THE INJUNCTIVE RELIEF TO WHICH YOU

3    JUST REFERRED, IS IT YOUR POSITION THAT WOULD BE

4    CONSISTENT -- IS THAT DISTINCT FROM -- WELL, LET ME ASK

5    THIS:

6              IF A STATUTE IS DEEMED UNENFORCEABLE

7    BECAUSE IT VIOLATES CONSTITUTIONAL RIGHTS, WHAT ABILITY

8    DO I HAVE TO ESTABLISH INJUNCTIVE RELIEF THAT PRESENTS

9    HOW THE STATUTE MIGHT BE CRAFTED OR MIGHT PROPERLY BE

10   APPLIED AS OPPOSED TO LEAVING THAT FUNCTION TO THE

11   LEGISLATORS?

12             MR. BRADY:  I THINK YOUR HONOR IS PERFECTLY

13   FINE TO DO EITHER WAY.

14             I THINK THAT YOU COULD SAY THAT THIS

15   COULD BE -- THAT YOU'RE ENJOINING IT AS APPLIED IN

16   THOSE COUNTIES THAT DO NOT RESPECT THE SECOND

17   AMENDMENT.

18             BUT IF YOUR HONOR DOESN'T FEEL THAT --

19   LOOK, TO BE FRANK, YOUR HONOR, THE REASON I RAISED THIS

20   IS THAT, WE ARE OF THE OPINION -- PLAINTIFFS ARE OF THE

21   OPINION THAT THE STATE DOES HAVE THE OPTION OF

22   RESTRICTING EITHER CONCEALED OR OPEN CARRY PER ITS

23   INTERESTS.  AND SO BY ASKING FOR THIS COURT TO ENJOIN

24   ITS OPEN-CARRY STATUTES, THAT'S IT.  IT DOESN'T HAVE A

25   WAY TO THEN GO AND FIX THINGS, UNLESS YOUR HONOR WAS TO

```
 1    INCLUDE IN YOUR ORDER SOMETHING LIKE THE SEVENTH

 2    CIRCUIT DID, JUDGE POSNER, IN THE MOORE CASE WHERE HE

 3    SAID, "ALL RIGHT.  YOU GUYS BANNED THE SECOND AMENDMENT

 4    RIGHT TO CARRY HERE, ILLINOIS.  YOU HAVE THREE MONTHS,"

 5    OR WHATEVER AMOUNT OF TIME HE GAVE, "TO FASHION SOME

 6    AVAILABILITY OF THE RIGHT."  YOU COULD DO THAT AS WELL.

 7              BUT I PUT THAT OUT THERE TO MAKE CLEAR

 8    THAT PLAINTIFFS ARE NOT SEEKING SOME PARTICULARIZED

 9    MANNER OF CARRY.  THE STATE DOES HAVE OPTIONS HERE.

10    BUT ONE OPTION THAT IT DOES NOT HAVE IS COMPLETE

11    DEPRIVATION OF THE RIGHT, EVEN IF IT'S NOT IN THE CORE.

12         THE COURT:  NO, I UNDERSTAND.

13         MR. BRADY:  SO UNLESS YOUR HONOR WANTS TO GET

14    INTO, YOU KNOW, A DISCUSSION ON THE EVIDENCE, I MEAN,

15    I --

16         THE COURT:  NO, I'M AWARE OF THE COMPETING

17    POSITIONS.  AND I'VE REFERRED TO THEM.

18              WHAT IS YOUR POSITION WITH RESPECT TO THE

19    POINT THAT I MADE IN THE TENTATIVE STATEMENT THAT THIS

20    IS DIFFERENT THAN A SUMMARY JUDGMENT MOTION IN THE

21    CONTEXT, FOR EXAMPLE, OF A CIVIL DISPUTE WHERE THE

22    DISPUTED EVIDENCE IS SOMETHING THAT WOULD WARRANT A

23    TRIAL?

24         MR. BRADY:  YOU KNOW, I -- UNFORTUNATELY, I

25    HAVE -- I HAVE SOME CASE LAW THAT I COULD CONSULT, BUT
```

```
1    I REALLY WAS NOT ANTICIPATING THAT PARTICULAR ISSUE.

2              I HAVE -- I THINK THAT WHEN THERE HAS

3    BEEN -- AND THERE IS A CASE THAT -- YOU KNOW, A U.S.

4    SUPREME COURT CASE, DEPARTMENT OF COMMERCE V.

5    UNITED STATES HOUSE OF REPRESENTATIVES, 525 U.S. 316 AT

6    331, WHICH SAYS THAT, YOU KNOW, A NON-MOVING PARTY CAN

7    CREATE A GENUINE ISSUE OF TRIABLE FACT OUT OF VALIDITY

8    OF THE EXPERT'S CONCLUSIONS BY CONTROVERTING THOSE.  OF

9    COURSE, YOUR HONOR IS SAYING THAT COULD BE DISTINCT

10   BECAUSE IT'S A LEGISLATIVE PROCLAMATION.  BUT I DON'T

11   THINK THAT THE GOVERNMENT GETS TO SIMPLY GET AWAY WITH

12   INVENTING, HEY, OUR PUBLIC SAFETY INTERESTS IS

13   FURTHERED, AND YOU JUST HAVE TO ACCEPT THAT.

14             THERE ARE VERY PROBLEMATIC ISSUES THAT

15   HAVE BEEN RAISED ABOUT PROFESSOR DONOHUE'S STUDY.  IF

16   THE GOVERNMENT GETS TO GET AWAY WITH DEPRIVING PEOPLE

17   OF THEIR RIGHTS BASED ON AN UNPUBLISHED STUDY THAT HAS

18   BEEN -- THAT HAS ANOTHER EXPERT IN THE FIELD

19   CONTROVERTING IT AND WHICH CITES PAPERS ERRONEOUSLY AND

20   THAT CONTRADICT HIS OWN FINDINGS AND THAT MAKES

21   STATEMENTS THAT HE -- HE ADMITS THAT HE DID NO ANALYSIS

22   OF OPEN CARRY, AND, YET, THAT'S WHAT THIS CASE IS, AT

23   LEAST AT THIS JUNCTURE, PRIMARILY ABOUT BECAUSE, YOU

24   KNOW, WE UNDERSTAND THIS COURT'S HANDS ARE BOUND TO

25   ADDRESS CONCEALED CARRY IN LIGHT OF PERUTA.  BUT
```

```
1    PROFESSOR DONOHUE'S ENTIRE STUDY, HIS ENTIRE FINDINGS
2    ARE BASED ON AN UNDERSTANDING -- A STUDY ABOUT THE
3    IMPACTS OF CONCEALED CARRY.  AND THEN HE DEDUCES ALL OF
4    HIS FINDINGS ABOUT OPEN CARRY ON THAT EVEN THOUGH HE
5    ADMITS NOT DOING ANY RELEVANT STUDY ON OPEN CARRY.  HE
6    ADMITS HE DIDN'T CONTROL FOR OPEN CARRY.  HE DOESN'T
7    KNOW ANYTHING ABOUT OPEN-CARRY STATUTES IN THE STATES
8    THAT HE ANALYZED.  THAT IS, PER SE, I THINK, A TRIABLE
9    ISSUE OF WHETHER HE -- HIS STUDY CAN BE RELIED UPON.
10             AND THEN YOU HAVE COMPETING EXPERTS WHO I
11   SUBMIT ON THE ISSUE OF WHETHER OPEN CARRY IS
12   PROBLEMATIC, TWO OF WHOM HAVE ACTUAL EXPERIENCE IN OPEN
13   CARRY JURISDICTIONS.
14             THE COURT:  CAN YOU CITE ANY CASE IN WHICH A
15   SECOND AMENDMENT CHALLENGE HAS BEEN MADE TO A STATUTE
16   WITH RESPECT TO CARRY AND A TRIAL WAS CONDUCTED WITH
17   RESPECT TO THE APPLICATION OF THE APPROPRIATE STANDARD
18   IN EVALUATING THE EVIDENCE?
19             MR. BRADY:  I BELIEVE MR. EISENBERG PROBABLY
20   COULD.  AND THAT WOULD BE THE CASE OF -- COULD YOU
21   REMIND?  IT'S THE 10-DAY WAIT PERIOD CASE, SILVESTER.
22             MR. EISENBERG:  IT'S NOT A CARRY CASE.
23             MR. BRADY:  TRUE.  I DID NOT HEAR THAT YOU
24   QUALIFIED IT AS A CARRY CASE.
25                  NO, YOUR HONOR.  I DON'T BECAUSE, AS YOU
```

```
1    SAW IN THE RECENT OPINION FROM THE DC CIRCUIT, THE

2    WRENN CASE, THEY TOOK MY VIEW, WHICH I THINK IF YOU

3    READ THAT OPINION, THE MAJORITY OPINION, IT IS

4    UNASSAILABLE LOGIC.  AND IT'S -- IT'S PERFECTLY STATED

5    HOW THINGS SHOULD GO.

6              THE COURT:  THANK YOU, MR. BRADY.

7              MR. BRADY:  THANK YOU.

8              THE COURT:  MR. EISENBERG?

9              MR. EISENBERG:  THANK YOU, YOUR HONOR.

10             THE DEFENSE SEES THE CASE THE SAME WAY

11   THAT YOU DO ACCORDING TO THE TENTATIVE RULING THAT YOU

12   RECITED A MOMENT AGO.

13             AND I JUST WANTED TO ADDRESS SOME OF THE

14   POINTS THAT PLAINTIFF'S COUNSEL HAS MADE AND ANSWER

15   OTHER QUESTIONS THAT YOU MIGHT HAVE.

16             THE COURT:  START WITH THIS ONE, YOU HAVE --

17   THE PARTIES HAVE SUBMITTED COMPETING EXPERT OPINIONS.

18   AND I DON'T THINK THAT THERE'S EVIDENCE THAT ANY OF

19   THESE OPINIONS WAS PRESENTED TO THE LEGISLATURE AT THE

20   TIME THAT IT ADOPTED THE LEGISLATION.

21             DO YOU AGREE WITH THAT?

22             MR. EISENBERG:  CORRECT.

23             THE COURT:  SO WHAT I WANT TO KNOW IS, WHAT

24   INSIGHT DO YOU HAVE WITH RESPECT TO HOW THAT -- THE

25   COMPETING EVIDENCE IS TO BE CONSIDERED IN THE CONTEXT
```

```
1    OF THESE MOTIONS?

2           MR. EISENBERG:  I BELIEVE YOUR UNDERSTANDING

3    OF THE LAW IS CORRECT.  THAT YOU DON'T GO TO TRIAL JUST

4    BECAUSE YOU HAVE COMPETING EXPERT DECLARATIONS IN A

5    CASE WHERE THE CONSTITUTIONALITY OF A STATUTE IS AT

6    STAKE.

7           AND THERE IS A BIT OF A LEGAL FICTION

8    THAT'S APPLIED AS TO WHAT WAS IN THE MIND OF THE

9    LEGISLATOR BECAUSE SOMETIMES YOU ARE DEFENDING THE

10   CONSTITUTIONALITY OF A LAW THAT'S VERY OLD THAT HAS NO

11   LEGISLATIVE HISTORY.  SO THE COURTS ALLOW THE ADVOCATES

12   TO PRESENT INFORMATION AT PRESENT WHICH IS ASCRIBED TO

13   THE ACTING LEGISLATURE.

14          IN THIS CASE, WE ACTUALLY HAVE A ROBUST

15   LEGISLATIVE HISTORY, WHICH WE'VE SUPPLEMENTED WITH

16   EXPERT DECLARATIONS.

17          THE LEGISLATIVE HISTORY, WERE WE TO HAVE

18   STOOD ON THAT ALONE, CONTAINS MOST OF THE ARGUMENTS

19   THAT WERE MADE BY THE LAW ENFORCEMENT EXPERTS IN THIS

20   CASE.  AND THERE IS NO -- THE DONOHUE STUDY THAT WE

21   PRESENTED IS A BRAND-NEW STUDY AND WAS NOT AVAILABLE TO

22   THE LEGISLATURE.  THOUGH, ONE THAT HE HAD DONE JUST

23   BEFORE THIS ONE IN 2014 IS ALSO NOT AVAILABLE.

24          BUT THERE'S NO CASE LAW THAT SAYS THAT

25   THE COURT SHOULD NOT CONSIDER THE BEST, MOST UP TO
```

```
1    DATE, CURRENT SCIENTIFIC INFORMATION WHEN EVALUATING

2    THE CONSTITUTIONALITY OF A STATUTE.  THE COURT DOESN'T

3    HAVE TO BE HANDICAPPED BY THE FACT THAT THE LEGISLATURE

4    MAY HAVE ACTED AT A POINT WHEN THERE WAS LESS

5    INFORMATION.

6              THE COURT:  WHAT IF THE NEW INFORMATION, LIKE

7    AS HERE, IS COMPETING?  WE HAVE ONE LAW ENFORCEMENT

8    OFFICER SAYING ONE THING AND ANOTHER SAYING A DIFFERENT

9    THING.

10             MR. EISENBERG:  RIGHT.

11                SO FOR THAT PARTICULAR ASPECT OF THE

12   QUESTION, THERE IS A HURDLE FOR THE DEFENSE TO GET

13   OVER, THE REASONABLE FIT HURDLE.  AND THE FOCUS OF THE

14   ANALYSIS SHOULD BE ON THE DEFENSE PRESENTATION.  IT IS

15   THEORETICALLY POSSIBLE THAT A PLAINTIFF COULD

16   COMPLETELY CONTROVERT EVERYTHING THAT A DEFENSE EXPERT

17   HAS PUT FORWARD, BUT THAT CERTAINLY HAS NOT HAPPENED

18   HERE.  AND I DON'T KNOW OF AN EXAMPLE OF IT ACTUALLY

19   HAPPENING.  I DO BELIEVE THAT YOUR UNDERSTANDING OF THE

20   LAW IS CORRECT.

21                IF YOU WOULD LIKE ME TO GET INTO THE

22   DETAILS OF THE COMPETING POSITIONS, I THINK YOU CAN SEE

23   THAT OUR EVIDENCE WAS NOT -- IT WITHSTANDS THE ATTACK

24   IN TERMS OF THE REASONABLE FIT ANALYSIS.  BUT IT DOES

25   REQUIRE DELVING INTO THE EVIDENCE.  BUT I'M NOT SURE I
```

```
 1    CAN GET INTO THAT BY CITING TO CASE LAW.

 2              THE COURT:  WHAT ABOUT MR. BRADY'S POSITION

 3    WITH RESPECT TO, AS HE EXPLAINED IN ONE HYPOTHETICAL,

 4    IF THE LEGISLATURE DECIDED THAT IT WOULD LIFT

 5    RESTRICTIONS ON LAW ENFORCEMENT THAT MIGHT OTHERWISE BE

 6    REQUIRED BY THE FOURTH AMENDMENT, WHY IS THIS

 7    DIFFERENT?

 8              MR. EISENBERG:  WELL, THE EXAMPLE THAT HE GAVE

 9    IS ESSENTIALLY REPEALING THE FOURTH AMENDMENT, THAT THE

10    LAW ENFORCEMENT CAN GO AND SEARCH SOMEBODY OR ARREST

11    SOMEBODY WITHOUT PROBABLE CAUSE.  IT'S A BAD ANALOGY

12    BECAUSE WE DO NOT HAVE -- I MEAN, THE PLAINTIFFS HAVE

13    USED CERTAIN ADJECTIVES TO DESCRIBE THESE LAWS AS

14    COMPLETE PROHIBITIONS, BUT THEY'RE NOT.  YOUR HONOR

15    LOOKED AT THEM, AND YOUR UNDERSTANDING OF THEM IS MORE

16    NUANCED AND SHOWS THAT THERE'S BEEN NO COMPLETE

17    DESTRUCTION OF THIS ALLEGED RIGHT.

18              WE DON'T HAVE -- THE PLAINTIFFS HAVE

19    TRIED TO CHARACTERIZE HELLER AS RECOGNIZING A RIGHT TO

20    CARRY IN PUBLIC.  I THINK THAT IS -- THAT'S NOT

21    CORRECT.  HELLER DID NOT RESOLVE THAT QUESTION.  IT'S

22    NOT POSSIBLE TO DISCERN SOMETHING FROM HELLER ABOUT, IF

23    THEY USED THE WORD "IN CASE OF CONFRONTATION," THAT'S

24    SUDDENLY A HOLDING THAT ANYONE CAN CARRY A FIREARM IN

25    PUBLIC.  I THINK THAT'S A GRAVE MISREADING OF HELLER.
```

```
1    HELLER LEFT THE QUESTION UNRESOLVED, BUT DID GIVE THE

2    COURTS A METHODOLOGY FOR ANSWERING QUESTIONS OF THAT

3    KIND.

4                    AND THE NINTH CIRCUIT HAS BEEN FOLLOWING

5    THAT METHODOLOGY.  AND WE, AS THE DEFENSE, FOLLOW THAT

6    METHODOLOGY.

7                    WE PRESENTED A ROBUST HISTORICAL

8    DISCUSSION THAT PROVES CONCLUSIVELY THAT THERE HAS

9    NEVER BEEN A RECOGNIZED RIGHT IN THE UNITED STATES TO

10   CARRY A FIREARM IN PUBLIC JUST IN CASE YOU SUDDENLY GET

11   ATTACKED BY SOMEBODY WHERE YOU WEREN'T EXPECTING IT.

12   THAT'S JUST NOT PART OF THE WAY THE SECOND AMENDMENT

13   HAS BEEN UNDERSTOOD.

14                    IT'S POSSIBLE TO READ A FEW CASES FROM

15   THE ANTEBELLUM SLAVE SOUTH THAT WAY.  BUT THE VAST

16   MAJORITY OF THE REST OF THE COUNTRY DID NOT FOLLOW THAT

17   CASE LAW.  WE PRESENTED ALL OF THE STATUTES GOING BACK

18   TO THE 17TH CENTURY.  AND THE PLAINTIFFS DID NOT HAVE A

19   RESPONSE TO ANY OF THAT.

20                    SO THE RIGHT THAT THE PLAINTIFFS ARE

21   ALLEGING EXISTS AND THAT HAS BEEN DESTROYED, ONE, IT'S

22   NOT ACCEPTED AS A RIGHT.  AND, TWO, IT HASN'T BEEN

23   COMPLETELY DESTROYED.

24                    THE SELF-DEFENSE COMPONENT OF THE

25   SITUATION IS RESPECTED CAREFULLY BY THE CALIFORNIA
```

```
1    LEGISLATURE.

2               ONE OF THE EXAMPLES THAT WAS NOT CITED IS

3    THE DOMESTIC VIOLENCE RESTRAINING ORDER EXCEPTION.  IF

4    SOMEONE HAS A DOMESTIC VIOLENCE RESTRAINING ORDER OUT

5    AGAINST A FORMER SPOUSE OR WHOEVER, THAT, IN CERTAIN

6    CIRCUMSTANCES, CAN JUSTIFY THE POTENTIAL VICTIM TO

7    CARRY.  SO THE LEGISLATURE HAS CAREFULLY CRAFTED A

8    NUMBER OF EXCEPTIONS OVER THE YEARS.  AND THEY RESPECT

9    THE RIGHT TO SELF-DEFENSE.  THEY GO FARTHER, PROBABLY,

10   THAN WHERE THE RIGHT IS.  ALTHOUGH, WE DON'T KNOW

11   EXACTLY WHAT THE FLOOR OF THE RIGHT IS IN THAT CONTEXT.

12               THE COURT:  WELL, WHAT ABOUT MR. BRADY'S

13   ARGUMENT THAT, IF THE EXCEPTION FOR PERSONAL SAFETY --

14   LET'S -- WHICH IS BROADER THAN SIMPLY THE ONE WHERE A

15   RESTRAINING ORDER HAS BEEN ISSUED TO PROTECT THE PERSON

16   WHO WISHES TO CARRY.

17               DO YOU AGREE WITH THAT?

18          MR. EISENBERG:  RIGHT.  YES --

19          THE COURT:  YOU DESCRIBE THAT AS AN

20   AFFIRMATIVE DEFENSE.

21               DO YOU AGREE WITH THAT?

22          MR. EISENBERG:  WELL, IT TECHNICALLY CAN BE

23   DESCRIBED AS AN AFFIRMATIVE DEFENSE, BUT I DON'T THINK

24   IT WOULD PLAY OUT THAT WAY IN REALITY.

25               I THINK THAT YOU CAN DESCRIBE ANYTIME A
```

1    PERSON IS USING A FIREARM AT ALL AND THEY GET ACCOSTED

2    BY LAW ENFORCEMENT ABOUT IT, THEY HAVE TO EXPLAIN WHAT

3    THEY'RE DOING.  IT'S NOT ANY DIFFERENT IN THE CASE OF

4    THE PERSONAL SAFETY OR THE EXIGENT CIRCUMSTANCES

5    EXCEPTION TO THE PUBLIC CARRY LAWS.

6            THE COURT:  WELL, IF A PERSON WERE NOT USING

7    THE WEAPON, BUT CARRYING IT AND WERE STOPPED BY LAW

8    ENFORCEMENT, THEN WHAT?

9            MR. EISENBERG:  THE STATUTE SAYS THAT LAW

10   ENFORCEMENT IS ALLOWED TO SEARCH THE WEAPON.  AND IT'S

11   NOT A FOURTH AMENDMENT VIOLATION.

12                AND --

13           THE COURT:  I UNDERSTAND.

14               BUT WOULD THE PERSON UNDER THAT

15   CIRCUMSTANCE FEEL AN OBLIGATION OR BE ASKED BY THE --

16   REASONABLE TO EXPECT THAT PERSON WOULD BE ASKED BY THE

17   LAW ENFORCEMENT OFFICER, WHY ARE YOU CARRYING THIS

18   WEAPON?

19           MR. EISENBERG:  ABSOLUTELY.  I THINK THAT

20   WOULD VERY LIKELY HAPPEN.

21           THE COURT:  WOULDN'T THE BURDEN BE ON THAT

22   PERSON TO EXPLAIN WHY, FOR PERSONAL SAFETY REASONS OR

23   ONE OF THE OTHER EXCEPTIONS, IT WAS APPROPRIATE?

24           MR. EISENBERG:  YES, ABSOLUTELY.  AND I THINK

25   THAT'S ENTIRELY APPROPRIATE AND CONSISTENT WITH THE

```
1    SECOND AMENDMENT.
2              THE PLAINTIFFS HAVE TRIED TO -- THE
3    PLAINTIFFS PASSED OVER ALL OF THE HISTORY THAT SHOWS
4    THAT THEY DON'T ACTUALLY HAVE A RIGHT TO DO WHAT THEY
5    WANT TO DO.
6              THE EXIGENT CIRCUMSTANCES EXCEPTION, TO
7    THE EXTENT THAT YOU WANT TO SAY THAT IS PART OF THE
8    RIGHT, I WOULDN'T AGREE.  BUT IT HAS BEEN PART OF
9    AMERICAN LAW SINCE THE 1830'S.  AND IT HAS EXPANDED AS
10   A RIGHT SINCE THAT TIME.
11             SO WE ARE NOT TALKING ABOUT A SITUATION,
12   FOR EXAMPLE, THEIR COMMERCIAL SPEECH SITUATION.  ALL
13   COMMERCIAL SPEECH IS BANNED.  THAT'S NOT AN ANALOGY TO
14   WHAT'S GOING ON HERE.  AND IT ALSO DOESN'T GIVE THE
15   FULL PICTURE OF THE REGULATIONS THAT ARE ACCEPTABLE FOR
16   COMMERCIAL SPEECH.  IT'S BLACK LETTER LAW THAT FALSE
17   ADVERTISING CAN BE PROHIBITED.  AND THERE'S NO FIRST
18   AMENDMENT PROBLEM THERE.
19             SO THERE ARE CIRCUMSTANCES WHERE FIRST
20   AMENDMENT RIGHTS ARE LIMITED.  THEY'RE EXPRESSLY
21   LIMITED, ACCORDING TO THE CASE LAW.  THE SAME IS TRUE
22   OF THE SECOND AMENDMENT.
23             THE PLAINTIFFS ARE ASKING FOR AN OVERLY
24   EXPANSIVE BROAD RIGHT THAT THE LEGISLATURE IS NOT BOUND
25   TO HONOR BECAUSE IT'S NOT A CONSTITUTIONAL RIGHT.  THE
```

```
 1    LEGISLATURE MADE VERY CAREFUL DETERMINATIONS ABOUT
 2    WHERE PUBLIC CARRY WOULD BE -- WHERE OPEN CARRY WOULD
 3    BE ALLOWED, WHERE IT WOULD NOT BE ALLOWED, UNDER WHAT
 4    CIRCUMSTANCES IT WOULD BE ALLOWED FOR.  THEY ARE
 5    NUMEROUS.  THEY'RE WELL THOUGHT OUT.  AND THEY'RE WAY
 6    ABOVE ANY CONSTITUTIONAL MINIMUM THAT MAY BE REQUIRED,
 7    ESPECIALLY IN THE ABSENCE OF THE SUPREME COURT DEFINING
 8    THAT RIGHT PRECISELY.
 9                    THE PLAINTIFFS, AGAIN, THEY SKIP OVER THE
10    WHOLE QUESTION OF THE -- HOW CLOSE DOES THE CONDUCT
11    COME TO THE CORE OF THE RIGHT?  THEY MISS -- THEY DON'T
12    ADDRESS THE FACT THAT THE CONDUCT MAY NOT BE PART OF
13    THE RIGHT AT ALL.
14                    BUT THEN THEY SAY, ESSENTIALLY, ONCE YOU
15    FIND THAT THE RIGHT IS IMPLICATED, YOU HAVE TO APPLY
16    STRICT SCRUTINY.  THAT SEEMS TO BE WHAT THEY'RE SAYING.
17    BUT THAT'S NOT CORRECT.  YOU STILL LOOK AT THIS
18    QUESTION OF HOW CLOSE YOU COME TO THE CORE OF THE
19    RIGHT.
20                    AND, HERE, YOU KNOW, THE RIGHT AT ISSUE
21    IS THE OPEN CARRY RIGHT.  IT'S NOT JUST A RIGHT OF
22    PUBLIC CARRY.  IT'S A RIGHT OF OPEN CARRY.
23                    THE PERUTA COURT GAVE US SOME GUIDANCE BY
24    SAYING THERE'S ABSOLUTELY NO RIGHT TO CONCEALED CARRY.
25    THE COURT DOESN'T HAVE TO GO THAT FAR TO SAY THERE'S
```

```
 1    ABSOLUTELY NO RIGHT OF OPEN CARRY FOR THE DEFENSE TO

 2    PREVAIL HERE.

 3              YOU DO -- AS YOUR HONOR WAS SEEING

 4    THINGS, YOU LOOK AT HOW CLOSE YOU COME TO THE CORE OF

 5    THE RIGHT, IF YOU BELIEVE THAT THE RIGHT HAS BEEN

 6    IMPLICATED.  HERE, YOU WOULD CERTAINLY APPLY

 7    INTERMEDIATE SCRUTINY.  YOU WOULD GO INTO THE ANALYSIS

 8    THAT WE -- OF SUBSTANTIAL GOVERNMENTAL INTEREST,

 9    REASONABLE FIT.  THERE'S NO DISPUTE ABOUT THE

10    SUBSTANTIAL GOVERNMENTAL INTEREST.  AND THE REASONABLE

11    FIT, WE GO WAY, WAY ABOVE WHAT'S BEEN NEEDED IN OTHER

12    CASES THAT THE NINTH CIRCUIT HAS DECIDED SHOWING THAT

13    THERE WAS A REASONABLE FIT.

14              IF I COULD ALSO ADDRESS THE SEVENTH

15    CIRCUIT DECISION IN MOORE THAT THE PLAINTIFFS HAVE

16    CITED.  THAT -- THE LAW IN ILLINOIS REALLY IS A

17    CONTRAST TO THE LAW THAT CALIFORNIA HAD.  THE LAW IN

18    ILLINOIS WAS REALLY A COMPLETE PROHIBITION.  IT DIDN'T

19    HAVE THE NUMEROUS EXCEPTIONS.  IT DIDN'T EVEN ALLOW FOR

20    ANYBODY TO GET A CONCEALED CARRY LICENSE IN A LAW

21    ENFORCEMENT JURISDICTION THAT ACCEPTED IT.  IT DIDN'T

22    ALLOW ANYBODY TO GET AN OPEN CARRY LICENSE IN A LAW

23    ENFORCEMENT JURISDICTION BELOW A CERTAIN POPULATION

24    COUNT THAT PERMITTED IT.  SO IT'S -- THAT SEVENTH

25    AMENDMENT -- THE SEVENTH CIRCUIT CASE IS NOT A
```

```
 1    PARTICULARLY APT ANALOGOUS CASE HERE, OTHER THAN TO
 2    SHOW THE CONTRAST, TO SHOW THE DIFFERENCE BETWEEN
 3    CALIFORNIA'S LAW AND THE ILLINOIS LAW.
 4              IT IS TRUE THAT THE WRENN DECISION WENT
 5    THE OTHER WAY FROM THE PERUTA EN BANC DECISION.  THE
 6    WRENN DECISION CITED THE PERUTA PANEL DECISION
 7    EXTENSIVELY.  THAT DECISION WAS OVERTURNED IN THE NINTH
 8    CIRCUIT.  THE WRENN DECISION, IN OUR VIEW, HAS NUMEROUS
 9    FLAWS; BUT IT'S NOT BINDING LAW.  IT ADDRESSED THE
10    EXACT SAME QUESTION THAT PERUTA DID ON CONCEALED CARRY.
11    IT CAME OUT DIFFERENTLY.  THIS COURT CANNOT DECIDE TO
12    FOLLOW WRENN EVEN IF THIS COURT BELIEVES THAT WRENN WAS
13    MORE PERSUASIVELY DECIDED.
14              I THINK THAT I HAVE MADE THE MAJOR POINTS
15    THAT I WANTED TO MAKE.  I AM HAPPY TO TAKE MORE
16    QUESTIONS FROM YOU.
17          THE COURT:  NO.  I UNDERSTAND YOUR POSITION.
18              MR. BRADY, ANYTHING NEW?
19          MR. BRADY:  THANK YOU, YOUR HONOR.
20              JUST TO CLARIFY, THE STATUTE ITSELF CALLS
21    THESE "AFFIRMATIVE DEFENSES."  SO I JUST WANTED TO SET
22    THE RECORD STRAIGHT ON THAT.
23              AND I JUST WANT TO SORT OF SUM THIS UP
24    FOR THE COURT.  IF THERE IS INDEED A RIGHT TO BEAR ARMS
25    BEYOND THE HOME, CALIFORNIA SIMPLY DOES NOT RESPECT
```

```
1    THAT RIGHT.  SO IF YOU ANSWER THE FIRST QUESTION IN

2    CHOVAN, PLAINTIFFS NECESSARILY PREVAIL.  THE STATE

3    WANTS TO DISTRACT THE COURT WITH THIS LITANY OF

4    EXCEPTIONS AS IF THEY'RE MEANINGFUL.

5              THE PLAINTIFFS, THE ONES BRINGING THIS

6    CASE, HAVE NO MEANINGFUL WAY TO CARRY A FIREARM IN

7    PUBLIC PLACES BEYOND SOME ISLANDS IN UNINCORPORATED

8    FORESTS WITH COYOTES.  THEY CAN PROTECT THEMSELVES FROM

9    COYOTES.  THAT'S ABOUT IT.

10             THEY HAVE NO OTHER MEANS TO HAVE A

11   FIREARM ON THEM TO DEPLOY IN -- TO BE ARMED AND READY

12   IN CASE OF CONFRONTATION.  THAT IS A FACT.

13             SO WHEN YOUR HONOR TALKS ABOUT THESE --

14   ASKED ABOUT THESE OTHER EXCEPTIONS, THE FACT THAT OTHER

15   PEOPLE GET TO ENJOY THEIR SECOND AMENDMENT RIGHT TO

16   BEAR ARMS DOESN'T ALLEVIATE THE CONSTITUTIONAL INJURIES

17   TO PLAINTIFFS ANYMORE THAN A STATUTE -- YOU KNOW, A LAW

18   THAT ALLOWS SOME PEOPLE TO SPEAK, RESPECTS THE FIRST

19   AMENDMENT RIGHTS OF --

20             THE COURT:  WELL, NO, I UNDERSTAND THAT

21   ARGUMENT.  BUT THAT -- THAT ASSUMES THAT IN -- THAT

22   ASSUMES THAT, IN ANY SCRUTINY, THERE CAN BE NO

23   DISTINCTIONS.

24             MR. BRADY:  I'M SORRY, I DIDN'T FOLLOW.

25             THE COURT:  TO THE EXTENT THAT A SCRUTINY IS
```

1    PERMITTED THAT ALLOWS -- THAT WOULD UPHOLD A STATUTE,

2    WHETHER RESTRICTING THE FIRST AMENDMENT OR ANOTHER, IT

3    MAY BE -- THE RESTRICTIONS MAY BE PERMITTED, AND IT MAY

4    MEAN THAT SOME PERSONS CAN'T SPEAK IN THE FASHION IN

5    WHICH THOSE PERSONS WANT TO SPEAK.

6              MR. BRADY:  OF COURSE.

7                   AND TO BE CLEAR, THE PLAINTIFFS ARE NOT

8    SAYING THAT THE STATE CANNOT REGULATE THE RIGHT TO

9    CARRY IN PUBLIC.  OF COURSE, THEY CAN REGULATE THE

10   RIGHT.  THIS IS NOT A REGULATION.  THE STATE WANTS TO

11   PAINT THIS AS A "REGULATION."  IT IS NOT.  IT IS A BAN.

12   AND SO THEY CAN'T SIMPLY SAY, "OH, WE HAVE THIS

13   EVIDENCE THAT SUPPORTS IT."  THEY -- IN FACT, THE STATE

14   SUPPORTS NO ARGUMENT THAT THERE'S A REASONABLE FIT

15   HERE.

16                   THEY ARGUE THAT THEIR INTERESTS ARE

17   FURTHERED BY THIS.  BUT LIKE I SAID -- SO IF THEY WERE

18   TO COME TO THE STUDY THAT SAYS, INTERESTS ARE FURTHERED

19   IN PUBLIC SAFETY BY RESTRICTING ANY OTHER RIGHT, THAT

20   WOULDN'T FLY BECAUSE YOU STILL HAVE TO SHOW THAT NOT --

21   THAT THERE'S NOT TOO MUCH SUBSTANTIALLY MORE BURDEN ON

22   THE CONSTITUTIONAL CONDUCT THAN NECESSARY.

23                   AND, HERE, IT IS A BAN ON THE RIGHT TO

24   BEAR ARMS.  AND --

25              THE COURT:  MR. BRADY, I UNDERSTAND.  BUT I

```
1    DON'T THINK I'M HEARING ANYTHING NEW.
2              MR. BRADY:  IF I MAY, ON THE RIGHT TO -- THE
3    SCOPE OF THE RIGHT?
4              YOU KNOW, THE STATE DISMISSES WHAT THEY
5    CALL THE "ANTEBELLUM STATE," YOU KNOW, "CASES" ABOUT
6    THE RIGHT TO CARRY.  THESE ARE THE VERY CASES THAT THE
7    SUPREME COURT OF THE UNITED STATES SAID REFLECT THE
8    MOST COMPARABLE RESTRICTION TO THE DISTRICT OF
9    COLUMBIA'S LAW.  SO WE'RE TALKING ABOUT CASES THAT THE
10   SUPREME COURT SAID -- IT DESCRIBED NUNN WHICH IS THE
11   PRIMARY CASE, AS PERFECTLY CAPTURING THE RIGHT TO BEAR
12   ARMS.  IT JUST -- IF YOU READ THE WRENN OPINION, YOUR
13   HONOR, NOT BECAUSE OF ITS APPLICATION TO A CONCEALED
14   CARRY PERMIT REGIME, BUT THE UNDERSTANDING OF THE
15   HISTORY OF THE RIGHT AND THAT THERE IS INDEED A RIGHT
16   TO BEAR ARMS.  AND ONCE THAT IS DECIDED, THEN
17   PLAINTIFFS PREVAIL.  THANK YOU.
18             THE COURT:  THANK YOU, MR. BRADY.
19             HERE'S WHAT I'D LIKE COUNSEL TO DO:
20   WITHIN A WEEK FROM TODAY, I'D LIKE YOU TO EACH FILE A
21   BRIEF NOT TO EXCEED FOUR PAGES IN WHICH YOU ADDRESS MY
22   QUESTION IN THE CONTEXT OF THIS CASE AS TO THE
23   APPROPRIATE DISPOSITION OF YOUR COMPETING MOTIONS FOR
24   SUMMARY JUDGMENT IN LIGHT OF THE COMPETING EVIDENCE
25   THAT EACH HAS OFFERED FROM YOUR COMPETING EXPERTS.
```

```
1              AND IN THAT BRIEFING, I'D LIKE YOU TO

2    ADDRESS, AMONG OTHERS, THE JACKSON CASE FROM THE NINTH

3    CIRCUIT, JACKSON VERSUS CITY AND COUNTY OF

4    SAN FRANCISCO, 746 F.3D 953; THE KACHALSKY CASE FROM

5    THE SECOND CIRCUIT, WHICH IS 701 F.3D 81; AND THE

6    FOURTH CIRCUIT'S DECISION IN WOOLARD V. GALLAGHER, 712

7    F.3D 865.

8              AND I -- SO I'D LIKE -- I'VE HEARD WHAT

9    YOU HAVE SAID TODAY.  I'M NOT IGNORING IT, BUT I'D LIKE

10   YOU TO LOOK AT THOSE CASES AND TELL ME HOW EACH SIDE

11   CONTENDS IT AFFECTS THE ANALYSIS HERE RECOGNIZING THAT,

12   FOR EXAMPLE, THE DEFENDANT HAS STATED THAT IT

13   DOESN'T -- IT MAY NOT, INASMUCH AS THE EVIDENCE THAT'S

14   TO BE CONSIDERED WOULD BE WHAT WAS ACTUALLY BEFORE THE

15   LEGISLATURE, INCLUDING WHAT'S REFLECTED IN THE

16   LEGISLATIVE HISTORY, BUT -- AND THAT THIS WOULD BE POST

17   LEGISLATION EVIDENCE.  BUT I'D LIKE YOUR VIEWS ON THIS

18   IN LIGHT OF OUR DISCUSSION TODAY.

19              CAN YOU GET THAT TO ME IN A WEEK?

20          MR. EISENBERG:  CERTAINLY.

21              WILL YOU BE ISSUING A WRITTEN STATEMENT

22   OF THE QUESTION, OR ARE WE TO RELY UPON WHAT YOU'RE

23   SAYING RIGHT NOW?

24          THE COURT:  I THINK I -- MY PLAN WOULD BE, THE

25   MINUTE ORDER IS GOING TO REFLECT THAT IT CALLS FOR
```

```
 1    SUPPLEMENTAL BRIEFING WITH RESPECT TO THE APPROPRIATE

 2    STANDARD TO BE APPLIED UNDER RULE 56 UNDER THE

 3    CIRCUMSTANCES OF THIS CASE.

 4                I DON'T KNOW THAT IT WILL CITE ALL THE

 5    CASES I JUST MENTIONED, BUT I ASSUME YOU WOULD GET

 6    THOSE.

 7                THANK YOU FOR YOUR HELP TODAY.

 8           MR. BRADY:  THANK YOU, YOUR HONOR.

 9           MR. EISENBERG:  THANK YOU, YOUR HONOR.

10           (END OF PROCEEDINGS)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES          )
                               )
STATE OF CALIFORNIA            )

            I, ALEXANDER T. JOKO, FEDERAL OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATE:  JULY 27, 2018


                    /S/ ALEXANDER T. JOKO
                    _____
                    ALEXANDER T. JOKO, CSR NO. 12272
                    FEDERAL OFFICIAL COURT REPORTER

< DATES >
JULY 27, 2018
1:28
NOVEMBER 6,
2017 1:30, 3:1
/S/ 1:33

< 1 >
10-DAY 19:21
12272 1:38,
1:35
1702 2:22
17TH 24:18
180 2:5, 2:11
1830 27:9

< 2 >
200 2:6, 2:12
2013 8:9
2014 21:23
28 1:14

< 3 >
300 2:21
316 18:5
331 18:6
350 1:40

< 4 >
4311 1:40

< 5 >
50 7:6, 7:16
525 18:5
56 35:2

< 6 >
6 3:9

< 7 >
701 34:5
712 34:6
746 34:4

753 1:14

< 8 >
81 34:5
865. 34:7
8:30 1:30, 3:4

< 9 >
90012 1:41
90013 2:23
90802 2:7, 2:13
953 34:4

< A >
A. 1:3
ABILITY 13:8,
16:7
ABLE 10:24,
11:18, 12:15,
14:6, 15:17
ABOVE 28:6,
29:11
ABOVE-ENTITLED
1:20
ABSENCE 28:7
ABSOLUTELY
26:19, 26:24,
28:24, 29:1
ACCEPT 18:13
ACCEPTABLE
27:15
ACCEPTED 24:22,
29:21
ACCESS 15:20
ACCOMMODATE
10:8
ACCOMPANIED
3:13
ACCORDING
20:11, 27:21
ACCOSTED 26:1
ACKNOWLEDGE 5:4
ACKNOWLEDGMENT
11:12
ACTED 22:4
ACTING 21:13
ACTION 5:2,

5:5, 14:14
ACTIVITIES 8:14
ACTIVITY 7:14,
7:15, 9:7,
12:16
ACTUAL 19:12
ACTUALLY 21:14,
22:18, 27:4,
34:14
ADDRESS 8:8,
15:9, 18:25,
20:13, 28:12,
29:14, 33:21,
34:2
ADDRESSED 6:23,
30:9
ADJECTIVES
23:13
ADMITS 18:21,
19:5, 19:6
ADOPTED 20:20
ADVERTISING
27:17
ADVOCATES 21:11
AFFECT 8:9
AFFECTS 34:11
AFFIRMATIVE
10:4, 10:17,
10:25, 11:4,
11:7, 14:11,
25:20, 25:23,
30:21
AGO 20:12
AGREE 20:21,
25:17, 25:21,
27:8
AJ_CSR@YAHOO.CO
M 1:42
AL 1:7, 1:13
ALARM 5:14
ALEXANDER 1:38,
1:8, 1:33, 1:35
ALLEGED 23:17
ALLEGING 24:21
ALLEVIATE 31:16
ALLOW 13:14,
13:15, 13:16,
13:19, 15:11,
15:12, 21:11,
29:19, 29:22

ALLOWED 9:21,
15:2, 26:10,
28:3, 28:4
ALLOWING 4:4,
10:20, 11:13
ALLOWS 31:18,
32:1
ALONE 21:18
ALTHOUGH 25:10
AMENDMENT 3:28,
6:24, 7:5, 7:7,
7:18, 8:1,
8:18, 8:24,
9:1, 9:3, 9:6,
9:15, 10:9,
12:1, 12:15,
13:1, 14:4,
14:16, 14:21,
16:1, 16:17,
17:3, 19:15,
23:6, 23:9,
24:12, 26:11,
27:1, 27:18,
27:20, 27:22,
29:25, 31:15,
31:19, 32:2
AMERICAN 27:9
AMONG 34:2
AMOUNT 17:5
ANALOGOUS 30:1
ANALOGY 23:11,
27:13
ANALYSIS 7:6,
7:11, 7:16,
18:21, 22:14,
22:24, 29:7,
34:11
ANALYTICAL 9:9
ANALYZED 19:8
ANGELES 1:28,
1:41, 2:23,
3:1, 1:3
ANSWER 11:7,
20:14, 31:1
ANSWERING 24:2
ANTEBELLUM
24:15, 33:5
ANTHONY 2:9
ANTICIPATING
18:1

ANYBODY 29:20, 29:22
ANYTIME 25:25
ANYWAY 14:22
APPEARANCES 2:1, 3:11
APPELLATE 4:23
APPLICABLE 8:19
APPLICATION 19:17, 33:13
APPLIED 16:10, 16:15, 21:8, 35:2
APPLIES 4:12, 8:19
APPLY 4:3, 28:15, 29:6
APPLYING 5:22, 7:11
APPROPRIATE 19:17, 26:23, 26:25, 33:23, 35:1
APT 30:1
ARGUE 11:4, 15:1, 32:16
ARGUING 15:4
ARGUMENT 14:12, 25:13, 31:21, 32:14
ARGUMENTS 21:18
ARISES 11:14
ARMED 9:22, 10:12, 10:14, 10:15, 10:21, 31:11
ARMS 9:17, 10:9, 10:11, 10:12, 12:2, 13:5, 30:24, 31:16, 32:24, 33:12, 33:16
ARREST 23:10
ARTICULATED 9:24
ASCRIBED 21:12
ASPECT 22:11
ASSERT 11:6
ASSOCIATES 2:4, 2:10

ASSUME 35:5
ASSUMES 31:21, 31:22
ATTACK 22:23
ATTACKED 24:11
ATTORNEY 2:19, 3:10, 3:17, 3:18
AUTHORITY 4:11
AVAILABILITY 17:6
AVAILABLE 21:21, 21:23
AWARE 17:16
AWAY 12:18, 18:11, 18:16

< B >
B. 2:3
BACK 13:23, 24:17
BAD 12:24, 23:11
BAN 9:10, 9:14, 10:18, 12:9, 13:17, 15:18, 15:24, 32:11, 32:23
BANC 30:5
BANNED 8:3, 17:3, 27:13
BANNING 13:18, 13:20
BARRING 14:2
BASED 18:17, 19:2
BASICALLY 8:13, 8:21, 11:14
BASIS 12:6
BEACH 2:7, 2:13
BEAR 10:9, 10:11, 12:2, 13:5, 30:24, 31:16, 32:24, 33:11, 33:16
BEARING 8:13
BEARS. 10:13
BECERRA 3:18
BEHALF 3:13

BELIEVE 6:25, 11:3, 15:6, 19:19, 21:2, 22:19, 29:5
BELIEVES 30:12
BELOW 29:23
BEST 21:25
BEYOND 30:25, 31:7
BINDING 30:9
BIT 21:7
BLACK 27:16
BOULEVARD 2:5, 2:11
BOUND 18:24, 27:24
BRADY 2:9, 3:12, 3:13, 6:19, 6:21, 8:10, 10:3, 11:24, 13:3, 14:5, 14:17, 16:12, 17:13, 17:24, 19:19, 19:23, 20:6, 20:7, 23:2, 25:12, 30:18, 30:19, 31:24, 32:6, 32:25, 33:2, 33:18, 35:8
BRAND-NEW 21:21
BRIEF 33:21
BRIEFING 34:1, 35:1
BRINGING 31:5
BROAD 27:24
BROADER 25:14
BUILDING 14:18
BUILDINGS 14:20
BURDEN 26:21, 32:21
BURDENS 5:13
BUREAU 5:20

< C >
CA 1:41, 2:7, 2:13, 2:23
CALIFORNIA 1:2,

1:28, 2:19, 3:1, 3:10, 9:18, 10:17, 12:3, 24:25, 29:17, 30:3, 30:25, 1:5, 1:12
CALL 33:5
CALLED 15:20
CALLS 15:4, 30:20, 34:25
CAPTURING 33:11
CAREFUL 28:1
CAREFULLY 24:25, 25:7
CARRYING 4:5, 8:5, 26:7, 26:17
CASE 7:23, 8:8, 9:23, 10:14, 10:16, 11:25, 13:7, 13:10, 14:25, 17:2, 17:25, 18:3, 18:4, 18:22, 19:14, 19:20, 19:21, 19:22, 19:24, 20:2, 20:10, 21:5, 21:14, 21:20, 21:24, 23:1, 23:23, 24:10, 24:17, 26:3, 27:21, 29:25, 30:1, 31:6, 31:12, 33:11, 33:22, 34:2, 34:4, 35:3
CASES 24:14, 29:12, 33:5, 33:6, 33:9, 34:10, 35:5
CAUSE 12:19, 23:11
CENTRAL 1:2, 7:4, 1:12
CENTURY 24:18
CERTAIN 4:4, 4:7, 4:16, 8:14, 14:1,

14:19, 23:13, 25:5, 29:23
CERTAINLY 22:17, 29:6, 34:20
CERTIFICATE 1:1
CERTIFY 1:14
CHALLENGE 6:17, 19:15
CHANGE 15:6, 15:23
CHARACTERIZE 23:19
CHARGED 10:5
CHIEF 6:2, 6:7
CHOVAN 8:8, 8:11, 8:21, 9:5, 31:2
CIRCUIT 8:8, 10:23, 13:8, 17:2, 20:1, 24:4, 29:12, 29:15, 29:25, 30:8, 34:3, 34:5, 34:6
CIRCUMSTANCE 26:15
CIRCUMSTANCES 25:6, 26:4, 27:6, 27:19, 28:4, 35:3
CITE 19:14, 35:4
CITED 25:2, 29:16, 30:6
CITES 18:19
CITIES 15:3
CITING 23:1
CITY 34:3
CIVIL 17:21
CLARIFY 14:5, 30:20
CLEAR 8:14, 13:4, 13:11, 15:10, 17:7, 32:7
CLINTON 2:3, 3:14
CLOSE 28:10, 28:18, 29:4

CODE 1:16
COLORADO 6:8
COLUMBIA 8:2, 33:9
COMES 11:6
COMMERCE 18:4
COMMERCIAL 9:13, 27:12, 27:13, 27:16
COMPARABLE 33:8
COMPARISON 7:25
COMPETING 4:13, 4:18, 4:20, 6:5, 6:9, 17:16, 19:10, 20:17, 20:25, 21:4, 22:7, 22:22, 33:23, 33:24, 33:25
COMPLETE 17:10, 23:14, 23:16, 29:18
COMPLETELY 22:16, 24:23
COMPONENT 7:4, 24:24
CONCEALED 13:9, 13:12, 13:14, 13:15, 13:19, 15:10, 15:13, 15:16, 15:21, 16:22, 18:25, 19:3, 28:24, 29:20, 30:10, 33:13
CONCERNING 4:2
CONCLUDED 4:25, 5:23
CONCLUSION 4:22, 7:3
CONCLUSIONS 18:8
CONCLUSIVE 5:7
CONCLUSIVELY 24:8
CONDUCT 7:12, 28:10, 28:12, 32:22
CONDUCTED 19:16
CONFERENCE 1:24

CONFLATION 7:22
CONFLICT 10:14
CONFORMANCE 1:22
CONFRONTATION 9:23, 23:23, 31:12
CONSIDER 21:25
CONSIDERED 5:10, 20:25, 34:14
CONSISTENT 16:4, 26:25
CONSTITUTIONAL 12:21, 16:7, 27:25, 28:6, 31:16, 32:22
CONSTITUTIONALITY 21:5, 21:10, 22:2
CONSTRUED 13:7
CONSULT 17:25
CONTAINER 9:20
CONTAINS 21:18
CONTEND 14:14
CONTENDS 34:11
CONTEXT 4:21, 4:23, 4:25, 6:17, 17:21, 20:25, 25:11, 33:22
CONTEXTS 4:17
CONTRADICT 18:20
CONTRAST 29:17, 30:2
CONTROL 19:6
CONTROLLING 4:11
CONTROVERSIES 12:24
CONTROVERT 22:16
CONTROVERTING 18:8, 18:19
CONVICT 11:20
CONVINCE 9:2
CONVINCINGLY 12:8
COOKE 6:7

COOKIES 15:25
CORE 3:27, 6:23, 7:8, 8:12, 8:22, 9:2, 9:15, 12:3, 17:11, 28:11, 28:18, 29:4
CORRECT 20:22, 21:3, 22:20, 23:21, 28:17, 1:16
COUNSEL 2:1, 13:10, 20:14, 33:19
COUNT 29:24
COUNTIES 15:3, 15:15, 15:19, 16:16
COUNTRY 24:16
COUNTY 34:3, 1:3
COUPLE 10:7
COURSE 18:9, 32:6, 32:9
COURTS 4:24, 5:3, 21:11, 24:2
COVINA 6:1
COYOTES 31:8, 31:9
CRAFTED 16:9, 25:7
CREATE 18:7
CRIME 5:21
CRIMES 5:24, 6:10
CRIMINAL 12:16
CRITICAL 9:1
CROSS-MOTIONS 3:22, 4:15
CSR 1:38, 1:35
CURRENT 22:1
CV116-06164-JAK 1:11
CV16-6164 3:9

< D >
DATE 22:1, 1:28

DAY 9:4
DC 20:1
DECIDE 12:1,
30:11
DECIDED 23:4,
29:12, 30:13,
33:16
DECISION 29:15,
30:4, 30:5,
30:6, 30:7,
30:8, 34:6
DECLARATIONS
21:4, 21:16
DEDUCES 19:3
DEEMED 16:6
DEFEND 11:13,
11:18
DEFENDANT 3:25,
6:1, 6:13,
34:12
DEFENDANTS
1:15, 2:17
DEFENDING 21:9
DEFENSE 10:4,
10:17, 10:25,
11:4, 11:7,
14:11, 20:10,
22:12, 22:14,
22:16, 24:5,
25:20, 25:23,
29:1
DEFENSES. 30:21
DEFINING 28:7
DEFINITION
12:22, 12:23
DELVING 22:25
DENY 3:25
DEPARTMENT 18:4
DEPLOY 31:11
DEPRIVATION
17:11
DEPRIVING 18:16
DEPUTY 3:17
DESCRIBE 23:13,
25:19, 25:25
DESCRIBED
25:23, 33:10
DESPITE 11:2,
13:9
DESTROYED

24:21, 24:23
DESTRUCTION
23:17
DETAILS 14:24,
22:22
DETERMINATION
5:7
DETERMINATIONS
28:1
DETERMINE 5:7
DICTATES 12:19
DIFFERENCE 30:2
DIFFERENT 4:16,
4:19, 4:20,
4:21, 6:12,
6:15, 6:16,
17:20, 22:8,
23:7, 26:3
DIFFERENTLY
30:11
DIRECTLY 4:3
DISCERN 23:22
DISCUSSION
7:13, 17:14,
24:8, 34:18
DISMISSES 33:4
DISPOSITION
33:23
DISPUTE 12:9,
17:21, 29:9
DISPUTED 17:22
DISTINCT 16:4,
18:9
DISTINCTIONS
31:23
DISTRACT 31:3
DISTRICT 1:1,
1:2, 1:4, 8:2,
33:8, 1:10,
1:12
DIVISION 1:2
DOING 12:20,
19:5, 26:3
DOMESTIC 25:3,
25:4
DONE 21:22
DONOHUE 5:19,
18:15, 19:1,
21:20
DOWN 9:11

DRASTIC 8:1
DURING 7:8
DYNAMIC 15:9

< E >
EARLIER 6:5
EAST 2:5, 2:11
ECONOMIC 5:20
EFFECTIVELY
9:16
EISENBERG 2:17,
3:16, 3:17,
3:19, 19:19,
19:22, 20:8,
20:9, 20:22,
21:2, 22:10,
23:8, 25:18,
25:22, 26:9,
26:19, 26:24,
34:20, 35:9
EITHER 8:15,
14:21, 16:13,
16:22
ELIMINATING
13:21
EN 30:5
ENACTED 13:25
ENACTMENT 5:23
END 9:4, 35:10
ENDS 11:25
ENFORCEMENT
4:6, 4:19, 6:6,
14:3, 21:19,
22:7, 23:5,
23:10, 26:2,
26:8, 26:10,
26:17, 29:21,
29:23
ENGAGED 12:16
ENHANCE 6:3
ENJOIN 16:23
ENJOINED 15:19
ENJOINING 16:15
ENJOY 10:25,
31:15
ENTIRE 19:1
ENTIRELY 14:2,
26:25
EQUIVALENT

12:13
ERRONEOUSLY
18:19
ESPECIALLY 28:7
ESSENTIALLY
23:9, 28:14
ESTABLISH 16:8
ET 1:7, 1:13
EVALUATING
19:18, 22:1
EVERYBODY
15:11, 15:13
EVERYTHING
15:24, 22:16
EVIDENCE 4:14,
4:18, 4:20,
5:15, 5:22,
6:1, 11:24,
12:7, 12:11,
12:12, 17:14,
17:22, 19:18,
20:18, 20:25,
22:23, 22:25,
32:13, 33:24,
34:13, 34:17
EXACT 30:10
EXACTLY 25:11
EXAMPLE 4:18,
14:18, 17:21,
22:18, 23:8,
27:12, 34:12
EXAMPLES 25:2
EXCEED 33:21
EXCEPT 14:2,
15:19
EXCEPTION
11:11, 25:3,
25:13, 26:5,
27:6
EXCEPTIONS 4:4,
4:7, 25:8,
26:23, 29:19,
31:4, 31:14
EXERCISE 15:25
EXIGENT 26:4,
27:6
EXISTS 24:21
EXPANDED 27:9
EXPANSIVE 27:24
EXPECT 26:16

EXPECTING 24:11
EXPERIENCE 19:12
EXPERT 5:18, 18:8, 18:18, 20:17, 21:4, 21:16, 22:16
EXPERTS 6:5, 19:10, 21:19, 33:25
EXPLAIN 11:5, 26:2, 26:22
EXPLAINED 6:15, 23:3
EXPRESSLY 14:19, 27:20
EXTENSIVELY 30:7
EXTENT 27:7, 31:25

< F >
F.3D 34:4, 34:5, 34:7
FACT 4:17, 10:20, 18:7, 22:3, 28:12, 31:12, 31:14, 32:13
FALSE 27:16
FAR 28:25
FARTHER 25:9
FASHION 15:17, 17:5, 32:4
FASHIONING 15:8
FAVOR 15:7
FEDERAL 1:39, 1:8, 1:36
FEEL 16:18, 26:15
FELONS 8:12
FEW 24:14
FICTION 21:7
FIELD 18:18
FILE 33:20
FIND 10:24, 28:15
FINDINGS 18:20, 19:1, 19:4

FINE 16:13
FIREARM 9:20, 10:6, 10:24, 11:6, 11:17, 23:24, 24:10, 26:1, 31:6, 31:11
FIREARMS 8:3, 14:18
FIRST 1:40, 8:23, 8:24, 9:15, 27:17, 27:19, 31:1, 31:18, 32:2
FIT 5:16, 12:6, 22:13, 22:24, 29:9, 29:11, 29:13, 32:14
FIX 16:25
FLANAGAN 1:7, 3:9
FLAWS 30:9
FLIPS 10:18
FLOOR 25:11
FLY 32:20
FOCUS 22:13
FOLLOW 24:5, 24:16, 30:12, 31:24
FOLLOWING 24:4
FOREGOING 1:16
FORESTS 31:8
FORGIVENESS 11:22
FORMAT 1:22
FORMER 6:7, 6:8, 25:5
FORWARD 22:17
FOUND 8:5
FOUNDING 7:19
FOUR 33:21
FOURTH 12:14, 23:6, 23:9, 26:11, 34:6
FRAMEWORK 9:9
FRANCISCO 34:4
FRANK 16:19
FULL 27:15
FUNCTION 16:10
FURTHERED

12:20, 13:18, 18:13, 32:17, 32:18

< G >
GALLAGHER 34:6
GAVE 17:5, 23:8, 28:23
GENERAL 2:19, 3:10, 3:17, 3:18
GENERALLY 9:6
GENUINE 18:7
GETS 18:11, 18:16
GIVE 4:19, 24:1, 27:14
GIVEN 3:27, 4:1, 4:3, 4:8, 6:17
GIVES 7:2
GOVERNMENT 2:20, 5:12, 11:14, 11:22, 12:23, 14:20, 18:11, 18:16
GOVERNMENTAL 29:8, 29:10
GRAND 7:9
GRANT 3:24
GRAVE 23:25
GREATLY 6:3
GUARDS 4:6, 14:3
GUIDANCE 28:23
GUN 11:17
GUYS 17:3

< H >
HANDICAPPED 22:3
HANDS 18:24
HAPPEN 11:15, 26:20
HAPPENED 22:17
HAPPENING 9:16, 22:19
HAPPENS 10:16,

11:17
HAPPY 30:15
HARDSHIPS 15:8
HARRIS 1:13, 3:10
HEAD 10:19
HEAR 4:17, 6:19, 19:23
HEARD 34:8
HEARING 33:1
HELD 1:20
HELLER 7:2, 7:23, 7:24, 8:13, 9:23, 10:10, 14:18, 15:4, 23:19, 23:21, 23:22, 23:25, 24:1
HELP 35:7
HEREBY 1:12
HISTORICAL 24:7
HISTORY 21:11, 21:15, 21:17, 27:3, 33:15, 34:16
HOLDING 7:22, 23:24
HOME 4:1, 7:1, 7:9, 7:10, 7:12, 8:3, 10:2, 12:2, 30:25
HOME-BOUND 7:13
HOMESTEAD 7:9
HONOR 3:12, 3:16, 6:21, 6:25, 9:19, 10:3, 12:11, 13:3, 16:12, 16:18, 16:19, 16:25, 17:13, 18:9, 19:25, 20:9, 23:14, 27:25, 29:3, 30:19, 31:13, 33:13, 35:8, 35:9
HONORABLE 1:3
HOUSE 18:5
HURDLE 22:12,

22:13
HYPOTHETICAL
23:3


< I >
IGNORING 34:9
ILLINOIS 17:4,
29:16, 29:18,
30:3
IMAGINE 15:17
IMMEDIATE 4:5
IMPACTS 19:3
IMPLICATED
28:15, 29:6
IMPORTANT 5:12
IMPOSE 14:15
INASMUCH 34:13
INCLUDE 17:1
INCLUDING 34:15
INCREASE 12:17
INCREASES 5:24
INDICATED 6:25
INDISPUTABLY
12:8
INDIVIDUAL 4:6,
15:20
INFORMATION
21:12, 22:1,
22:5, 22:6
INITIAL 6:22,
10:9, 11:3
INJUNCTIVE
16:2, 16:8
INJURIES 31:16
INSIGHT 20:24
INTEREST 5:17,
29:8, 29:10
INTERESTS
16:23, 18:12,
32:16, 32:18
INTERMEDIATE
4:11, 5:6,
5:12, 9:12,
12:5, 29:7
INVENTING 18:12
INVITING 11:5
INVOLVED 4:2
ISLANDS 31:7
ISSUE 4:22,

5:1, 6:11, 8:8,
15:20, 18:1,
18:7, 19:9,
19:11, 28:20
ISSUED 25:15
ISSUES 4:24,
10:2, 18:14
ISSUING 15:16,
34:21
IT. 32:13
ITEM 3:9
ITSELF 30:20


< J >
JACKSON 34:2,
34:3
JOHN 1:3
JOKO 1:38, 1:8,
1:33, 1:35
JONATHAN 2:17,
3:17
JUDGE 1:4, 17:2
JUDGMENT 3:23,
4:21, 6:17,
11:9, 17:20,
33:24
JUDICIAL 1:24
JUNCTURE 18:23
JURISDICTION
29:21, 29:23
JURISDICTIONS
19:13
JUSTIFY 25:6


< K >
KACHALSKY 34:4
KAMALA 1:13,
3:10
KEEP 10:11
KEEPING 8:13
KIND 24:3
KLECK 6:6
KRONSTADT 1:3


< L >
LATER 14:24
LAW 2:20, 4:6,

4:19, 6:6,
14:2, 17:25,
21:3, 21:10,
21:19, 21:24,
22:7, 22:20,
23:1, 23:5,
23:10, 24:17,
26:2, 26:7,
26:9, 26:17,
27:9, 27:16,
27:21, 29:16,
29:17, 29:20,
29:22, 30:3,
30:9, 31:17,
33:9
LAW-ABIDING 9:7
LAWFUL 8:16,
14:22
LAWFULLY 11:17
LAWS 5:21,
5:24, 6:10,
23:13, 26:5
LAYING 11:2
LAYS 8:21
LEAD 4:22
LEAST 18:23
LEAVING 16:10
LEFT 8:20,
10:25, 24:1
LEGAL 21:7
LEGISLATION
6:18, 20:20,
34:17
LEGISLATIVE
5:2, 5:5,
18:10, 21:11,
21:15, 21:17,
34:16
LEGISLATOR 5:8,
6:8, 21:9
LEGISLATORS
5:9, 16:11
LEGISLATURE
20:19, 21:13,
21:22, 22:3,
23:4, 25:1,
25:7, 27:24,
28:1, 34:15
LESS 22:4
LETTER 27:16

LICENSE 15:13,
29:20, 29:22
LIFT 23:4
LIGHT 18:25,
33:24, 34:18
LIKELY 26:20
LIMITED 7:1,
11:21, 27:20,
27:21
LIMITING 7:13
LITANY 31:3
LOCATIONS 9:22
LOCKED 4:9,
9:20
LOGIC 20:4
LONG 2:7, 2:13,
3:21
LOOK 11:19,
16:19, 28:17,
29:4, 34:10
LOOKED 4:24,
23:15
LOS 1:28, 1:41,
2:23, 3:1, 1:3
LOT 10:12
LUCKY 11:16


< M >
MAJOR 30:14
MAJORITY 20:3,
24:16
MANDATES 10:8
MANNER 17:9
MATTER 3:23,
3:26, 12:9,
1:20
MATTERS 9:3
MEAN 7:24,
17:14, 23:12,
32:4
MEANINGFUL
9:17, 11:11,
31:4, 31:6
MEANS 8:17,
31:10
MEASURED 5:2,
5:5
MEET 8:18
MENTIONED 6:5,

9:19, 35:5
MENTIONS 7:9
METHODOLOGIES 5:23
METHODOLOGY 24:2, 24:5, 24:6
MICHAEL 2:17
MICHEL 2:4, 2:10
MICHELLE 1:7
MIND 15:6, 21:8
MINIMUM 28:6
MINUTE 34:25
MISREADING 23:25
MOMENT 20:12
MONDAY 1:30, 3:1
MONFORT 2:3, 3:14
MONTHS 17:4
MOORE 17:2, 29:15
MORNING 3:12, 3:15, 3:16, 3:19
MOTION 3:25, 4:21, 11:3, 11:9, 17:20
MOTIONS 21:1, 33:23
MUSTER 14:16

< N >
NATIONAL 5:20
NATURAL 7:12
NAUGHTY 11:15
NECESSARILY 31:2
NECESSARY 32:22
NEED 11:13, 12:12
NEEDED 29:11
NEEDS 4:5, 6:22
NEW 22:6, 30:18, 33:1
NINTH 8:8, 10:23, 13:7,

24:4, 29:12, 30:7, 34:2
NO. 1:38, 30:17, 1:35
NON-MOVING 18:6
NONSENSITIVE 15:2, 15:3
NOR 15:12
NUANCED 23:16
NUMBER 25:8
NUMEROUS 28:5, 29:19, 30:8
NUNN 33:10

< O >
OBJECTIVE 5:13
OBLIGATION 26:15
OBVIOUSLY 12:10
OCCASION 7:14
OCEAN 2:5, 2:11
OFFERED 33:25
OFFICE 2:18
OFFICER 22:8, 26:17
OFFICERS 4:19, 12:14
OFFICIAL 1:39, 1:1, 1:8, 1:36
OKAY 11:15, 14:12
OLD 21:10
ONCE 9:4, 28:14, 33:16
ONE 7:1, 8:5, 9:4, 10:10, 15:14, 17:10, 20:16, 21:22, 21:23, 22:7, 22:8, 23:3, 24:21, 25:2, 25:14, 26:23
ONE. 11:25
ONES 31:5
OPEN 4:2, 4:5, 5:17, 6:2, 6:10, 10:1, 13:13, 13:16, 13:21, 14:1,

14:15, 15:9, 15:12, 15:18, 16:22, 18:22, 19:4, 19:5, 19:6, 19:11, 19:12, 28:2, 28:21, 28:22, 29:1, 29:22
OPEN-CARRY 16:24, 19:7
OPENLY 13:2
OPINES 6:2
OPINION 16:20, 16:21, 20:1, 20:3, 33:12
OPINIONS 4:20, 6:12, 20:17, 20:19
OPPORTUNITY 11:21
OPPOSED 16:10
OPPOSITION 4:14, 11:8
OPTION 9:8, 16:21, 17:10
OPTIONS 17:9
ORDER 17:1, 25:3, 25:4, 25:15, 34:25
ORDINANCE 7:11, 8:2
OTHERS 34:2
OTHERWISE 23:5
OUTSIDE 8:17, 10:2, 12:2, 14:21
OVERLY 27:23
OVERTURNED 30:7
OWN 18:20

< P >
PAGE 1:22
PAGES 7:6, 7:16, 33:21
PAINT 32:11
PANEL 10:23, 30:6
PAPER 5:20
PAPERS 18:19

PART 8:11, 24:12, 27:7, 27:8, 28:12
PARTICULAR 18:1, 22:11
PARTICULARIZED 17:8
PARTICULARLY 30:1
PARTIES 4:13, 20:17
PARTY 18:6
PASS 14:16
PASSED 27:3
PC 2:4, 2:10
PEOPLE 8:14, 9:7, 12:15, 18:16, 31:15, 31:18
PER 13:2, 16:22, 19:8
PERFECTLY 16:12, 20:4, 33:11
PERIOD 19:21
PERMISSION 10:1
PERMIT 9:25, 15:21, 33:14
PERMITS 15:16
PERMITTED 14:4, 29:24, 32:1, 32:3
PERMITTING 4:8
PERSON 9:25, 10:15, 10:24, 25:15, 26:1, 26:6, 26:14, 26:16, 26:22
PERSONAL 10:1, 25:13, 26:4, 26:22
PERSONS 32:4, 32:5
PERSUASIVELY 30:13
PERUTA 10:23, 13:7, 18:25, 28:23, 30:5, 30:6, 30:10
PESKY 12:18

PICTURE 27:15
PLACE 14:25
PLACES 14:20,
15:2, 31:7
PLACING 14:1
PLAINTIFF 3:25,
11:2, 15:7,
20:14, 22:15
PLAINTIFFS 1:9,
2:3, 3:13, 6:4,
9:16, 13:9,
14:6, 15:10,
16:20, 17:8,
23:12, 23:18,
24:18, 24:20,
27:2, 27:3,
27:23, 28:9,
29:15, 31:2,
31:5, 31:17,
32:7, 33:17
PLAN 34:24
PLAY 25:24
PLEASE 3:11,
6:20
POINT 6:22,
11:21, 17:19,
22:4
POINTS 20:14,
30:14
POLICE 5:13,
6:2, 6:7
POLICY 11:18,
12:24
POPULATION
29:23
POSITION 8:7,
8:9, 11:16,
13:1, 13:25,
16:3, 17:18,
23:2, 30:17
POSITIONS 4:18,
6:9, 17:17,
22:22
POSNER 17:2
POSSESS 7:18
POSSIBLE 22:15,
23:22, 24:14
POST 34:16
POTENTIAL 5:14,
25:6

POTENTIALLY
14:8
PRECISELY 28:8
PRESENT 21:12
PRESENTATION
22:14
PRESENTED 5:15,
5:19, 6:1, 6:4,
6:13, 20:19,
21:21, 24:7,
24:17
PRESENTS 16:8
PRESIDING 1:4
PRESUMED 8:18
PRESUMPTIVELY
8:16, 14:22
PRETTY 8:3
PREVAIL 29:2,
31:2, 33:17
PRIMARILY 18:23
PRIMARY 33:11
PRIOR 10:21
PRIVATE 7:21
PROBABLE 12:18,
23:11
PROBABLY 19:19,
25:9
PROBLEM 9:14,
27:18
PROBLEMATIC
18:14, 19:12
PROCEEDINGS
1:26, 35:10,
1:18
PROCLAMATION
18:10
PROFESSOR 5:19,
6:6, 18:15,
19:1
PROHIBITED
27:17
PROHIBITING
9:6, 14:17
PROHIBITION
29:18
PROHIBITIONS
23:14
PROMOTING 5:14
PROPERLY 16:9
PROTECT 12:2,

25:15, 31:8
PROTECTED 7:20
PROTECTING 5:18
PROTECTION 4:1,
9:8
PROVES 24:8
PROVIDE 6:9,
6:12, 7:3
PROVIDED 14:11
PROVIDENCE 11:1
PROVIDES 5:21,
10:18
PROVIDING 12:13
PUBLIC 5:14,
5:18, 5:25,
6:3, 6:11,
7:15, 7:21,
8:6, 9:17,
10:6, 11:18,
12:17, 12:19,
13:18, 13:20,
18:12, 23:20,
23:25, 24:10,
26:5, 28:2,
28:22, 31:7,
32:9, 32:19
PURPOSE 3:27
PURPOSES 9:18,
13:6
PURSUANT 1:14
PUT 11:8, 17:7,
22:17


< Q >
QUALIFIED 19:24
QUALIFIES 7:3
QUESTION 6:23,
8:20, 8:24,
11:25, 13:23,
14:8, 14:13,
15:5, 22:12,
23:21, 24:1,
28:10, 28:18,
30:10, 31:1,
33:22, 34:22
QUESTIONS
20:15, 24:2,
30:16

< R >
RAISED 16:19,
18:15
RANEY 6:2
RATIONAL 12:5
REACH 5:6
READ 20:3,
24:14, 33:12
READY 9:23,
10:12, 10:14,
10:21, 31:11
REALITY 25:24
REALLY 18:1,
29:16, 29:18
REASON 7:2,
16:19
REASONABLE
5:16, 22:13,
22:24, 26:16,
29:9, 29:10,
29:13, 32:14
REASONABLY 5:8
REASONS 4:10,
10:7, 11:19,
13:18, 13:20,
26:22
RECEIVE 10:1
RECENT 20:1
RECITED 20:12
RECOGNIZED 24:9
RECOGNIZES
10:11, 10:19
RECOGNIZING
23:19, 34:11
RECORD 30:22
REDUCING 5:13
REFERENCING
10:4
REFERRED 16:3,
17:17
REFLECT 33:7,
34:25
REFLECTED 34:15
REGARDLESS 9:9,
12:5
REGIME 33:14
REGULATE 32:8,
32:9
REGULATION

32:10
REGULATION.
32:11
REGULATIONS
27:15, 1:24
REJECTING 14:10
RELATIONSHIP
6:10
RELEVANT 19:5
RELIED 19:9
RELIEF 15:8,
15:17, 16:2,
16:8
RELUCTANT 5:3,
5:4
RELY 34:22
REMIND 19:21
REPEALING 23:9
REPEATEDLY
7:17, 13:11
REPLY 11:9
REPORT 5:20
REPORTED 1:18
REPORTER 1:39,
1:1, 1:10, 1:36
REPORTER'S 1:26
REPORTS 5:19
REPRESENTATIVES
18:5
REQUEST 11:22
REQUESTING 13:8
REQUIRE 22:25
REQUIRED 23:6,
28:6
REQUIREMENT
12:18, 12:19
REQUIRES 10:22
RESEARCH 5:20
RESOLVE 23:21
RESPECT 6:9,
12:4, 14:1,
15:15, 16:16,
17:18, 19:16,
19:17, 20:24,
23:3, 25:8,
30:25, 35:1
RESPECTED
10:22, 24:25
RESPECTS 31:18
RESPONSE 24:19

REST 24:16
RESTRAINING
25:3, 25:4,
25:15
RESTRAINT 12:22
RESTRICTING
4:2, 7:12,
12:14, 16:22,
32:2, 32:19
RESTRICTION
8:1, 8:4, 10:5,
33:8
RESTRICTIONS
5:17, 6:2, 8:5,
8:15, 14:1,
14:15, 14:23,
23:5, 32:3
RETIRED 6:6
REVIEW 8:19
REVIEWED 3:26
RIGHT. 17:6
RIGHTS 8:12,
12:21, 16:7,
18:17, 27:20,
31:19
ROBUST 21:14,
24:7
ROOM 1:40
ROSSI 6:6
RULE 6:16,
15:7, 35:2
RULING 20:11


< S >
SAFETY 4:5,
5:14, 5:18,
5:25, 6:3,
6:11, 10:2,
12:17, 12:19,
13:18, 13:20,
18:12, 25:13,
26:4, 26:22,
32:19
SAN 34:4
SAW 20:1
SAYING 11:14,
13:5, 13:11,
15:11, 15:12,
18:9, 22:8,

28:16, 28:24,
32:8, 34:23
SAYS 7:5, 7:17,
7:19, 8:22,
11:21, 18:6,
21:24, 26:9,
32:18
SCHOOLS 14:20
SCIENTIFIC 22:1
SCOPE 7:6,
7:22, 7:25,
8:17, 8:23,
8:25, 9:6,
14:21, 33:3
SCRUTINY 4:12,
9:11, 9:12,
12:5, 28:16,
29:7, 31:22,
31:25
SE 13:2, 19:8
SEAN 2:9, 3:12
SEARCH 12:15,
23:10, 26:10
SEARCHED 8:4
SECOND 3:27,
6:24, 7:5, 7:7,
7:17, 8:1,
8:17, 8:22,
8:23, 9:1, 9:3,
9:6, 10:9,
12:1, 13:1,
14:4, 14:16,
14:21, 15:25,
16:16, 17:3,
19:15, 24:12,
27:1, 27:22,
31:15, 34:5
SECTION 2:20,
1:14
SECURITY 4:6,
14:3
SEEING 29:3
SEEKING 13:12,
13:13, 17:8
SEEMS 28:16
SEES 20:10
SELF-DEFENSE
7:7, 9:18,
10:20, 13:6,
24:24, 25:9

SELF-DEFENSE.
7:5
SENSITIVE
14:19, 14:25
SET 30:21
SEVENTH 17:1,
29:14, 29:24,
29:25
SEVERAL 15:14
SHALL 15:20
SHOW 30:2,
32:20
SHOWED 12:8
SHOWING 29:12
SHOWN 3:28
SHOWS 23:16,
27:3
SIDE 34:10
SILENCE 11:9
SILVESTER 19:21
SIMILAR 8:4
SIMPLY 7:5,
9:8, 15:24,
18:11, 25:14,
30:25, 32:12
SITUATION
24:25, 27:11,
27:12
SKIP 28:9
SLAVE 24:15
SOMEBODY 10:21,
11:6, 11:13,
23:10, 23:11,
24:11
SOMEONE 25:4
SOMETIMES 21:9
SOMEWHAT 15:5
SOON 12:1
SORRY 10:12,
31:24
SORT 15:9,
30:23
SOUTH 2:21,
24:15
SPECIFIC 9:22
SPEECH 9:13,
27:12, 27:13,
27:16
SPOUSE 25:5
SPRING 2:21

STAKE 21:6
STANDARD 4:11,
5:6, 5:12,
8:19, 19:17,
35:2
START 20:16
STATE 3:11,
9:8, 11:3,
12:7, 12:13,
13:14, 13:25,
14:14, 15:1,
15:11, 15:15,
15:22, 16:21,
17:9, 31:2,
32:8, 32:10,
32:13, 33:4,
33:5, 1:5
STATED 20:4,
34:12
STATEMENT
17:19, 34:21
STATEMENTS
18:21
STATES 1:1,
1:4, 18:5,
19:7, 24:9,
33:7, 1:10,
1:16, 1:26
STATISTICAL
5:22
STATUTE 4:4,
5:8, 9:25,
13:25, 14:13,
15:18, 16:6,
16:9, 19:15,
21:5, 22:2,
26:9, 30:20,
31:17, 32:1
STATUTES 4:2,
16:24, 19:7,
24:17
STATUTORY 14:14
STENOGRAPHICALL
Y 1:18
STEP 9:4
STOOD 21:18
STOPPED 26:7
STRAIGHT 30:22
STREET 1:40,
2:21

STRICKEN 12:4
STRICT 9:11,
28:16
STRIKE 9:10
STUDY 12:14,
18:15, 18:17,
19:1, 19:2,
19:5, 19:9,
21:20, 21:21,
32:18
SUBMIT 19:11
SUBMITTED 4:13,
12:8, 20:17
SUBSTANTIAL
29:8, 29:10
SUBSTANTIALLY
32:21
SUDDENLY 23:24,
24:10
SUFFICIENT
10:8, 11:5,
14:11
SUITE 2:6,
2:12, 2:22
SUM 30:23
SUMMARY 3:23,
4:21, 6:16,
11:9, 17:20,
33:24
SUPPLEMENTAL
35:1
SUPPLEMENTED
21:15
SUPPORT 4:14
SUPPORTED 5:9
SUPPORTS 32:13,
32:14
SUPREME 18:4,
28:7, 33:7,
33:10
SYSTEM. 15:21


< T >
T. 1:38, 1:8,
1:33, 1:35
TABLE 12:6
TALKS 7:4,
7:10, 7:17,
7:18, 31:13

TECHNICALLY
25:22
TENTATIVE 3:24,
6:14, 15:7,
17:19, 20:11
TERMS 5:11,
5:25, 22:24
TEST 5:5, 6:16,
8:21
THEMSELVES
11:13, 31:8
THEORETICALLY
22:15
THOUGH 9:14,
19:4, 21:22
THREE 6:4,
7:10, 17:4
TITLE 1:14
TODAY 33:20,
34:9, 34:18,
35:7
TOOK 20:2
TOTAL 7:9
TOUGH 15:25
TRANSCRIPT
1:26, 1:18,
1:22
TRANSPORT 4:9
TRANSPORTED
9:21
TRANSPORTING
11:16
TRANSPORTING.
9:19
TRIABLE 4:22,
4:25, 18:7,
19:8
TRIAL 17:23,
19:16, 21:3
TRIED 23:19,
27:2
TRUE 19:23,
27:21, 30:4,
1:16
TRYING 14:9
TWO 4:19, 5:22,
19:12, 24:22
TYPE 5:1
TYPES 14:22

< U >
UNANSWERED 8:20
UNASSAILABLE
20:4
UNDERSTAND
11:23, 12:25,
14:9, 14:12,
17:12, 18:24,
26:13, 30:17,
31:20, 32:25
UNDERSTANDING
19:2, 21:2,
22:19, 23:15,
33:14
UNDERSTOOD
7:20, 24:13
UNENFORCEABLE
16:6
UNFORTUNATELY
8:20, 17:24
UNINCORPORATED
31:7
UNITED 1:1,
1:4, 18:5,
24:9, 33:7,
1:10, 1:14,
1:24
UNLESS 16:25,
17:13
UNLOADED 4:10,
9:20
UNPUBLISHED
18:17
UNRESOLVED 24:1
UPHOLD 32:1
USING 26:1,
26:6


< V >
V. 3:9, 18:4,
34:6
VALIDITY 18:7
VALUE 11:12
VAST 24:15
VEIN 8:4
VERSUS 8:12,
15:9, 34:3
VICTIM 25:6

VIEW 3:24,
6:14, 20:2,
30:8
VIEWS 34:17
VIOLATES 16:7
VIOLATION 10:5,
10:18, 26:11
VIOLENCE 7:21,
25:3, 25:4
VIOLENT 5:21,
5:24, 6:10
VS 1:11


< W >
WAIT 3:21,
19:21
WAITING 3:20
WANTED 20:13,
30:15, 30:21
WANTS 12:11,
17:13, 31:3,
32:10
WARRANT 10:2,
12:18, 17:22
WEAPON 13:2,
15:16, 15:21,
26:7, 26:10,
26:18
WEAPONS 4:9
WEEK 33:20,
34:19
WEST 1:40
WESTERN 1:2
WHATEVER 8:19,
17:5
WHEREBY 15:18
WHETHER 5:7,
5:8, 5:16,
8:16, 9:2, 9:9,
12:3, 12:5,
19:9, 19:11,
32:2
WHOEVER 25:5
WHOLE 28:10
WHOM 19:12
WILL 10:24,
11:3, 11:4,
34:21, 35:4
WISHES 25:16

WITHIN 7:1,
8:23, 8:25,
9:5, 9:7, 9:15,
12:3, 33:20
WITHOUT 23:11
WITHSTANDS
22:23
WOOLARD 34:6
WORD 23:23
WORK 12:21
WORKED 12:9
WRENN 20:2,
30:4, 30:6,
30:8, 30:12,
33:12
WRITTEN 34:21


< X >
XAVIER 3:18


< Y >
YEARS 25:8
YOURSELF 11:18